Chase A. Adams (#15080)
Erika M. Larsen (#16494)
**STEELE | ADAMS | HOSMAN**
765 East 9000 South, Suite A1
Sandy, UT 84094
(801) 816-3999
chase@sahlegal.com
erika@sahlegal.com

Ephraim Olson (#15215)
Olson Harnish Law PLLC
2150 South 1300 East, Suite 500
Salt Lake City, UT 84106
(385) 287-1700
ephraim@olsonharnish.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LEEANNE MAXFIELD, an individual, and on behalf of all others similarly situated; JAY CLAYTON, an individual, and on behalf of all others similarly situated; CHEREE KAHRS, an individual, and on behalf of all others similarly situated; JODI ROWLEY, an individual, and on behalf of all others similarly situated; BARBARA ADAMS, an individual, and on behalf of all others similarly situated; MICHAEL WYRICK, an individual, and on behalf of all others similarly situated; VICTORIA BOWER, an individual, and on behalf of all others similarly situated; HEATHER DAWN HART, an individual, and on behalf of all others similarly situated; BOYD BROTHERSEN, an individual, and on behalf of all others similarly situated; SAMMI WILCOX, an individual, and on behalf of all others similarly situated; ALISON CICALA, an individual, and on behalf of all others similarly situated; CALVIN OCKEY, an | **COMPLAINT AND JURY DEMAND**<br><br><br>Case No.<br>Judge: |

individual, and on behalf of all others similarly situated; LISA OCKEY, an individual, and on behalf of all others similarly situated.

              Plaintiffs,

v.

UTAH DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, as a subdivision and/or agency of the STATE OF UTAH; CADE MEIER an individual; TIFFANY CLASON, an individual; JEFF L. COLVIN, an individual; SALVADOR PETILOS, an individual; ANGELA MICKLOS, an individual; RUTHANNE OAKEY FROST, an individual; TIM BEARDALL, an individual; MAN DIEP, an individual; JOHN BARRAND, an individual; and DOES 1-10, inclusive;

              Defendants.

Plaintiffs LeeAnne Maxfield, Jay Clayton, Cheree Kahrs, Jodi Rowley, Barbara Adams, Michael Wyrick, Victoria Bower, Heather Dawn Hart, Boyd Brothersen, Sammi Wilcox, Alison Cicala, Calvin Ockey, and Lisa Ockey, individually and on behalf of all other persons similarly situated, (collectively hereinafter "Collective Representatives", "Plaintiffs", or individually "Plaintiff"), by and through counsel of record, hereby allege, complain, and demand against Defendants Utah Department of Alcoholic Beverage Control ("DABC"), Cade Meier, Tiffany Clason, Jeff L. Colvin, Salvador Petilos, Angela Micklos, RuthAnne Oakey Frost, Tim Beardall, Man Diep, John Barrand, and Does 1-10, inclusive (collectively hereinafter "Defendants" or individually "Defendant") as follows:

## PRELIMINARY STATEMENT FOR FLSA CLAIMS

1.      Plaintiffs bring these FMLA claims on behalf of themselves and all other similarly situated current and former Package Agents[1] of Defendants who were paid a contracted rate for all work performed, instead of an hourly rate, regardless of how many hours were worked or whether those hours exceeded forty (40) hours in any given workweek.

2.      Plaintiffs, individually and on behalf of all others similarly situated, bring this action against Defendants for their unlawful failure to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201–219 (the "FLSA").

3.      Plaintiffs bring a collective action under the FLSA to recover the unpaid overtime wages owed to them individually and to all other similarly situated Package Agent employees, current and former, of Defendants. Members of the Collective Action are referred to as the "Collective Members."

4.      The Collective Members are all current and former Package Agents who are or were employed by Defendants at any time.

5.      This is an action for, among other things, unpaid overtime wages, liquidated damages, interest, attorneys' fees, and costs under the FLSA.

6.      The FLSA was enacted to "protect all covered workers from substandard wages and oppressive working hours." Under the FLSA, employers must pay all non-exempt employees an overtime premium for all time spent working in excess of forty (40) hours per week.

---

[1] For the purposes of this Complaint, "Package Agents" is exclusively a job title use for the purpose of classifying the putative collective of similarly situated individuals. The term "Package Agent" does not refer to Utah Code § 32B-2-601, *et seq.*, is not necessarily the job title of Plaintiffs and other members of the putative collective, and has no bearing or relation to any specialization, skill, education, training, or other qualification that might otherwise be associated with such a job title.

7.      Defendants engaged in the regular policy and practice of willfully and intentionally misclassifying their Package Agents as independent contractors rather than employees. Specifically, Defendants subjected Plaintiffs and the Collective Members to their policy and practice of willfully and intentionally misclassifying their Package Agents, who were employees, as independent contractors and then failing and/or refusing to pay them overtime for time they worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a).

8.      Therefore, Defendants did not pay Plaintiffs or the Collective Members the applicable overtime rate, in violation of 29 U.S.C. § 207.

9.      In addition to the FLSA claims for unpaid overtime, Plaintiffs bring this action individually to recover damages for other separate money damages, including but not limited to unpaid benefits, from Defendants for their fraudulent and negligent misrepresentation of the Plaintiffs' employment status, which Plaintiffs relied on to their detriment; to recover damages from Defendants for their breach of implied employment contract between Plaintiffs and Defendants, and to recover their rightful benefits under the Utah Retirement System as employees of the State of Utah, among other causes of action.

## JURISDICTION AND VENUE

10.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this action arises under the Constitution and the laws of the United States. This Court has supplemental subject matter jurisdiction for all other claims pursuant to 28 U.S.C. § 1367 because all related claims are so related to claims arising under 29 U.S.C. § 1331

that they form part of the same case or controversy under Article III of the United States Constitution.

12.     Venue is proper in the District of Utah pursuant to 28 U.S.C. § 1391(b) and (c) because the acts giving rise to the claims of Plaintiffs and the Collective Members occurred within the District of Utah, and Defendants regularly conduct business in and have engaged in the conduct alleged in the Complaint—and thus are subject to personal jurisdiction in—the District of Utah.

13.     This case falls outside of the Governmental Immunity Act of Utah ("GIAU"), Utah Code § 63G-7-101 *et seq.*

14.     Defendants' actions as described herein does not constitute actions consistent with a governmental function, and instead are consistent with that of a private employer.

15.     The authorizing statue of the DABC, Utah Code § 32B-2-204, specifically states that the DABC "is liable to respond in damages in a case if a private corporation under the same circumstances would be liable."

16.     In addition, or in the alternative, individual Defendants, specifically Cade Meier, Tiffany Clason, Jeff L Colvin, Salvador Petilos, Angela Micklos, RuthAnne Oakey Frost, Tim Beardall, Man Diep, John Barrand acted outside of their statutory authority as employees of DABC or of the State, by asserting control over Plaintiffs in such a manner that they created an employer-employee relationship under multiple Federal and State laws.

17.     This employer-employee relationship is not authorized under Utah Code 32B-2-601(3)(b). Each action any of the individual Defendants took that created an employer-employee relationship, was outside of their statutory authority and thus, outside of the scope of the GIAU.

18.     In addition, or in the alternative, individual Defendants, specifically Cade Meier, Tiffany Clason, Salvador Petilos, Angela Micklos, and RuthAnne Oakey Frost made representations to or failed to correct a misrepresentation to the Plaintiffs, which actions were fraudulent or willful misconduct, and which fraudulent or willful misconduct led Plaintiffs to enter into contracts with Defendants which failed to correctly classify Plaintiffs' worker status and which misclassification was the proximate cause of injury to Plaintiffs which make place those actions outside the scope of the GIAU.

19.     Notwithstanding, any and all jurisdictional prerequisites pursuant to the GIAU have been fully satisfied and this Court has jurisdiction to hear these claims.

20.     On or about May 17, 2021, Plaintiffs served a Notice of Claim on Defendants, pursuant to Utah Code § 63G-7-401.

21.     On or about June 18, 2021, Plaintiffs served a supplemental Notice of Claim on Defendants, identifying additional defendants and the identities of individual governmental employees, pursuant to Utah Code § 63G-7-202(c)(i); 63G-7-401(3)(a)(iv).

22.     Said Notices of Claim was served upon the agent of service identified in Utah Code § 63G-7-401(3)(b)(ii) and Rule 4(d)(1) of the Utah Rules of Civil Procedure, namely Rebecca Lee, Administrative Assistant for the State of Utah.

23.     None of the Defendants accepted Plaintiffs' claim within sixty (60) days of service of the Notice of Claim.

24.     Pursuant to Utah Code § 63G-7-403(2), the Plaintiffs as of the date of the filing of this Complaint and Jury Demand, have filed and begun the action against the above-named Defendants within one year of the date following the expiration of the statutory 60-day time period, and these claims are timely.

25. The Plaintiff has met all of the statutory requirements of the Governmental Immunity Act of Utah, Utah Code §§ 63G-7-101, *et seq.*

## PARTIES

26. Plaintiffs reincorporate by reference all allegations in all preceding paragraphs.

### Plaintiffs

27. At all times material to the matters alleged in this Complaint, LeeAnne Maxfield was an individual residing in Millard County, State of Utah, and is an employee of Defendants.

28. At all times material to the matters alleged in this Complaint, Jay Clayton was an individual residing in Sanpete County, State of Utah, and is an employee of Defendants.

29. At all times material to the matters alleged in this Complaint, Cheree Kahrs was an individual residing in Sanpete County, State of Utah, and is an employee of Defendants.

30. At all times material to the matters alleged in this Complaint, Jodi Rowley was an individual residing in Beaver County, State of Utah, and is an employee of Defendants.

31. At all times material to the matters alleged in this Complaint, Barbara Adams was an individual residing in Iron County, State of Utah, and is an employee of Defendants.

32. At all times material to the matters alleged in this Complaint, Michael Wyrick was an individual residing in Millard County, State of Utah, and is an employee of Defendants.

33. At all times material to the matters alleged in this Complaint, Victoria Bower was an individual residing in Wayne County, State of Utah, and is an employee of Defendants.

34. At all times material to the matters alleged in this Complaint, Heather Dawn Hart was an individual residing in Garfield and Washington Counties, State of Utah, and is an employee of Defendants.

35.     At all times material to the matters alleged in this Complaint, Boyd Brothersen was an individual residing in Sanpete County, State of Utah, and was, until this year, an employee of Defendants.

36.     At all times material to the matters alleged in this Complaint, Sammi Wilcox was an individual residing in Sanpete County, State of Utah, and is an employee of Defendants.

37.     At all times material to the matters alleged in this Complaint, Alison Cicala was an individual residing in Beaver County, State of Utah, and is an employee of Defendants.

38.     At all times material to the matters alleged in this Complaint, Calvin Ockey was an individual residing in Carbon County, State of Utah, and is an employee of Defendants.

39.     At all times material to the matters alleged in this Complaint, Lisa Ockey was an individual residing in Carbon County, State of Utah, and is an employee of Defendants.

**Collective**

40.     At all material times, Collective Representative LeeAnne Maxfield was a full-time, non-exempt employee of Defendants from approximately 1994 through present day.

41.     At all material times, Collective Representative Jay Clayton was a full-time, non-exempt employee of Defendants from approximately 2011 through present day.

42.     At all material times, Collective Representative Cheree Kahrs was a full-time, non-exempt employee of Defendants from approximately 2011 through present day.

43.     At all material times, Collective Representative Jodi Rowley was a full-time, non-exempt employee of Defendants from approximately 1993 through present day.

44.     At all material times, Collective Representative Barbara Adams was a full-time, non-exempt employee of Defendants from approximately 1993 through present day.

45.    At all material times, Collective Representative Michael Wyrick was a full-time, non-exempt employee of Defendants from approximately 2015 through present day.

46.    At all material times, Collective Representative Victoria Bower was a full-time, non-exempt employee of Defendants from approximately 1992 through present day.

47.    At all material times, Collective Representative Heather Dawn Hart was a full-time, non-exempt employee of Defendants from approximately 1997 through present day.

48.    At all material times, Collective Representative Boyd Brothersen was a full-time, non-exempt employee of Defendants from approximately 1986 through 2021.

49.    At all material times, Collective Representative Sammi Wilcox was a full-time, non-exempt employee of Defendants from approximately 2017 through present day.

50.    At all material times, Collective Representative Alison Cicala was a full-time, non-exempt employee of Defendants from approximately 2018 through present day.

51.    At all material times, Collective Representative Calvin Oakey was a full-time, non-exempt employee of Defendants from approximately 2012 through present day.

52.    At all material times, Collective Representative Lisa Ockey was a full-time, non-exempt employee of Defendants from approximately 2012 through present day.

53.    Throughout Collective Representatives' entire employment, they were paid a fixed salary per month, regardless of the number of hours they worked for Defendants.

54.    At all material times, Collective Representatives were employed by Defendants but were misclassified as independent contractors. Defendants employed Plaintiffs to run DABC-operated liquor stores and sell DABC-owned and -controlled liquor on behalf of Defendants.

55.     At all material times, Collective Representatives were employees of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1) and were non-exempt employees under 29 U.S.C. § 213 (a)(1).

56.     Collective Representatives have given their written consent to be parties and Plaintiffs in this action pursuant to 29 U.S.C. § 216(b), true and accurate copies of which are attached to this Complaint as **Exhibit A**.

57.     Collective Representatives bring this action on behalf of themselves and on behalf of all other persons similarly situated who are current or former Package Agents of Defendants, including but not limited to Package Agents who have already or will agree(d) in writing to join this action seeking recovery under the FLSA.

58.     Collective Representatives bring this action on behalf of themselves and on behalf of all other persons similarly situated who are current or former Package Agents of Defendants, including but not limited to Package Agents who were not paid overtime for time worked in excess of forty (40) hours in any given workweek and whose wages, therefore, were non-compliant with the FLSA.

### Defendants

59.     At all times material to the matters alleged in this Complaint, Defendant State of Utah is a political subdivision of and state within the United States of America and, at all times relevant, was authorized to conduct business throughout the State of Utah.

60.     At all times material to the matters alleged in this Complaint, Defendant DABC is an agency of the State of Utah and, at all times relevant, was authorized to conduct business throughout the State of Utah.

61.     At all times material to the matters alleged in this Complaint, Defendant Cade Meier was an individual residing in Salt Lake County, State of Utah and acted as deputy director of the DABC.

62.     At all times material to the matters alleged in this Complaint, Defendant Tiffany Clason was an individual residing in Salt Lake County, State of Utah and acted as executive director of the DABC.

63.     At all times material to the matters alleged in this Complaint, Defendant Salvador Petilos was an individual residing in Salt Lake County, State of Utah and acted as executive director of the DABC, until he resigned.

64.     At all times material to the matters alleged in this Complaint, Defendant Jeff L. Colvin was an individual residing in Salt Lake County, State of Utah and acted as package agent program director for the DABC.

65.     At all times material to the matters alleged in this Complaint, Defendant Angela Micklos was an individual residing in Salt Lake County, State of Utah and acted as compliance director of the DABC.

66.     At all times material to the matters alleged in this Complaint, Defendant RuthAnne Oakey Frost was an individual residing in Salt Lake County, State of Utah and acted as compliance director of the DABC, until she resigned.

67.     At all times material to the matters alleged in this Complaint, Defendant Tim Beardall was an individual residing in Utah County, State of Utah and acted as internal auditor of the DABC, until he resigned.

68.     At all times material to the matters alleged in this Complaint, Man Diep was an individual residing in Salt Lake County, State of Utah and acted as finance director of the DABC, until she resigned.

69.     At all relevant times, Defendants, excluding John Barrand, owned and/or operated the DABC, managing the sale and distribution of alcohol in the State of Utah.

70.     Defendants are authorized to do business in the State of Utah and were at all relevant times Collective Representative's and the Collective Members' Employer as defined by 29 U.S.C. § 203(d).

71.     At all times material to the matters alleged in this Complaint, Defendant John Barrand was an individual residing in Salt Lake County, State of Utah and acted as executive director of the Department of Human Resource Management and serves as the Executive Director under the Utah State Retirement and Insurance Act, Utah Code § 49-11-101, *et seq*.

72.     At all relevant times, Defendant John Barrand was responsible for properly classifying Plaintiffs as employees or independent contractors.

73.     At all relevant times, Defendant John Barrand was responsible for determining whether Plaintiffs receive Utah State employment benefits pursuant to the Utah State Retirement and Insurance Act, Utah Code § 49-11-101, *et seq*.

74.     Under the FLSA, and at all relevant times, all Defendants are employers. The FLSA defines "employer" as any individual who acts directly or indirectly in the interest of an employer in relation to an employee, including as joint employers.

75.     At all relevant times, all Defendants had the authority to, and did in fact, do one or more of the following: hire and fire employees, oversee the hiring of employees, supervise and

12

control work schedules or the conditions of employment, assert control over Plaintiffs and Collective Members as to the methods of performing the job, mandate that Plaintiffs and Collective Members perform certain actions (such as attending trainings) and prohibit Plaintiffs and Collective Members from performing certain actions (such as putting up comic strips or tip jars in the package agencies), instruct Plaintiffs and Collective Members how to perform the role of Package Agent, determine the rate and method of payment, determined the classification of Plaintiffs and Collective Members, perform the procurement for the Plaintiffs' salaries through the Utah Division of Finance, and maintain employment records in connection with Plaintiffs' and the Collective Members' employment with Defendants. As entities who acted in the interest of other Defendants in relation to their employees, all Defendants are subject to individual liability under the FLSA.

76.     Upon information and belief, each of the Defendants gave consent to, ratified, and authorized the acts of all other Defendants, as alleged in this Complaint.

77.     Defendants, collectively and each of them individually, are sued in both their individual and corporate capacities.

78.     Defendants are jointly and severally liable for the injuries and damages sustained by Plaintiffs and Collective Members.

79.     At all relevant times, Plaintiffs and Collective Members were "employees" of Defendants as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

80.     The provisions set forth in the FLSA, 29 U.S.C. § 201, *et seq.*, apply to Defendants.

81.     At all relevant times, Defendants were and, unless they have resigned, continue to be "employers" as defined by FLSA, 29 U.S.C. § 201, *et seq.*, as defined in the Workers'

Compensation Act, Utah Code 34A-2-101, *et. seq.*, as defined in the Utah Occupational Disease

Act, Utah Code 34A-3-101, *et. seq.*, as defined in 26 U.S.C. § 3401 and 26 CFR § 31.3401(c)-1,

as defined in the Patient Protection and Affordable Care Act, 42 U.S.C. § 300gg-11, *et. seq.* and

as interpreted by the United States Supreme Court, as defined in the Employment Security Act,

Utah Code 35A-4-101, *et. seq.*, and as held under common law, as defined by the United States

Supreme Court.

82.     Defendants individually and/or through an enterprise or agent, directed and

exercised control over Plaintiffs' and the Collective Members' work and wages at all relevant

times.

83.     The aforementioned individually named Defendants are properly named as

Defendants in this action pursuant to Utah Code § 63G-7-202(c)(i) because, as discussed herein,

they acted through fraud or willful misconduct.

84.     At all relevant times, Plaintiffs and the Collective Members, in their work for

Defendants, were engaged in commerce.

85.     At all relevant times, Plaintiffs and the Collective Members, in their work for

Defendants, were employed by an enterprise engaged in commerce that had annual gross sales or

receipts of, upon information and belief, at least $427.61 Million in Fiscal Year ("FY") 2017.

86.     At all relevant times, Plaintiffs and the Collective Members, in their work for

Defendants, were employed by an enterprise engaged in commerce that had annual gross sales or

receipts of, upon information and belief, at least $453.69 Million in FY 2018.

87.     At all relevant times, Plaintiffs and the Collective Members, in their work for Defendants, were employed by an enterprise engaged in commerce that had an annual gross sales or receipts of, upon information and belief, at least $479.32 Million in FY 2019.

88.     At all relevant times, Plaintiffs and the Collective Members, in their work for Defendants, were employed by an enterprise engaged in commerce that had an annual gross sales or receipts of, upon information and belief, at least $500.21 Million in FY 2020.

89.     At all relevant times, Plaintiffs and the collective Members in their work for Defendants, were employed by an enterprise engaged in commerce that had an annual gross sales or receipts of, upon information and belief, at least $517 Million in FY 2021.

90.     At all relevant times, all Defendants were horizontal and/or vertical joint employers of Plaintiffs and the Collective Members. At all relevant times: (1) Defendants were not completely disassociated with respect to the employment of Plaintiffs and the Collective Members; and (2) Defendants were under common control of the DABC, and consequently Plaintiffs and the Collective Members' employment. In any event, at all relevant times, Defendants were joint employers under the FLSA and 29 C.F.R. § 791.2(b) and employed Plaintiffs and Collective Members.

91.     In addition, each individual Defendant acted to control Plaintiffs in such a way that they created an employer-employee relationship with the Plaintiffs under multiple Utah and Federal laws.

92.     Individual Defendants participated in making decisions about or representing to Plaintiffs the worker classification of Plaintiffs. Defendants' actions or representations were outside of the Defendants' statutory authority.

93.    Individual Defendants participated in collecting, holding, and using Plaintiffs' sales tax amounts for purposes other than remitting those amounts to the State of Utah, which sales tax amounts were required to be held in trust for the State under Utah Law. These actions were outside of the Defendants statutory authority.

94.    At all times individual Defendants were agents of the DABC or the State of Utah as they were purporting to act under their color of authority.

95.    The identity and involvement of DOES 1-10 are currently unknown to Plaintiff, and they are therefore listed as DOE defendants. Plaintiffs reserve the right to amend this Complaint to include the true identity and involvement of said defendants if such is later ascertained.

## FACTUAL ALLEGATIONS

96.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

97.    Defendants own, manage and/or operate an enterprise doing business managing and directing the sale and distribution of alcohol throughout the State of Utah.

98.    One of Defendants' primary marketplace offerings requires the Plaintiffs and Collective Members, who provide services in the sale and distribution of alcohol through the State of Utah.

99.    While Plaintiffs and Collective Members contract with Defendants on a yearly basis, the contract renewal process is and has been automatic and has continued, in some instances, for several decades.

100.    Upon information and belief, Defendants employ more than fifty (50) individuals.

16

101.     Defendants provided Plaintiffs and Collective Members with a detailed employee handbook governing the required day-to-day operations of the Plaintiffs and Collective Members. This provision of an employee handbook exceeds the statutory requirements of the Alcoholic Beverage Control Administrative Act, Utah Code 32B-2-101, *et. seq.* (ABCAA), specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

102.     Defendants continue to require Plaintiffs and Collective Members to follow the detailed directives from the employee handbook.

103.     Defendants require and provide extensive training to Plaintiffs and Collective Members to instruct them of DABC policies and procedures and their obligations as Package Agents under Utah and Federal law and of their obligations to follow strict DABC policies and procedures. While Defendants are required to train state store managers and employees, this requirement exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

104.     Trainings and use of the handbook and other DABC procedures are not voluntary but are instead mandatory for Plaintiffs and Collective Members.

105.     Plaintiffs and Collective Members were not aware of their duties under Utah and Federal law with regard to the sale of alcohol prior to their employ with Defendants.

106.     Neither the Plaintiffs nor the Collective Members were previously employed as state store managers prior to their employ with Defendants.

107.     Neither Plaintiffs nor Collective Members had experience or expertise selling or distributing alcohol prior to their employ with Defendants.

108.    Plaintiffs and Collective Members perform a job that is integral to the Defendants' enterprise—the sale of DABC-owned alcohol in Utah.

109.    Defendants integrate Plaintiffs and Collective Members seamlessly into their enterprise with their state store manager employees, including promoting Plaintiffs and Collective Members both on the DABC website and through the use of many of the same DABC employment procedures.

110.    Defendants require Plaintiffs and Collective Members to prepare and send daily, weekly, monthly, and quarterly reports to Defendants. Defendants require that Plaintiffs and Collective Members submit these reports using Defendants' own software and using DABC-provided and DABC-dictated forms and methods. While Defendants may make such mandates for state store managers and employees, this requirement exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

111.    Defendants require Plaintiffs and Collective Members to utilize equipment and software owned by Defendants for all of their transactions, reports, and other business functions. Any requirement for package agents to use DABC equipment must be done through rule making authority delegated in Utah Code 32B-2-101, *et. seq.* which has not been done and which therefore exceeds the requirements of the ABCAA.

112.    Defendants require Plaintiffs and Collective Members to attend weekly, bi-weekly, and semi-annual trainings to instruct Plaintiffs and Collective Members on how to use this equipment and software and provide direct instruction to Plaintiffs and Collective Members regarding performance of their work for Defendants.

113.    Defendants exclusively set the price for the purchase and sale of all inventory sold by Plaintiffs and Collective Members.

114.    Defendants provide all shelf and price tags for all the inventory that Plaintiffs sell. Plaintiffs are forbidden from using any tags other than those provided by Defendants. This requirement to use Defendants' tags exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

115.    Defendants retain exclusive control over the hiring of any sub-employees of Plaintiffs and Collective Members. Plaintiffs and Collective Members cannot hire sub-employees without Defendants first reviewing the candidates and approving them. Defendants conduct and maintain background checks on any persons designated by Plaintiffs and Collective Members to act as managers or otherwise handle Defendants' funds. If Defendants disapprove of any employee candidate, Plaintiffs and Collective Members are prohibited from employing that candidate. Defendants' control over Plaintiffs' sub-employees exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

116.    Defendants require Plaintiffs and Collective Members operate for a minimum of thirty-five hours each week. Defendants additionally require Plaintiffs and Collective Members to work several additional hours performing opening and closing procedures, counting inventory, ordering inventory, preparing reports, attending meetings, receiving DABC liquor according to Defendants' schedule, which is often outside of contracted operating hours, manually changing price tags after contracted operating hours when Defendants decide to unilaterally change prices, administrative duties, and cleaning the stores. As a result, Defendants require Plaintiffs and Collective Members to work more than forty (40) hours per week consistently.

117.    Plaintiffs and Collective Members are forbidden from setting or changing their hours of operation without first obtaining written authorization from Defendants. While Defendants may make such mandates for state store managers and employees, this requirement exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

118.    Plaintiffs and Collective Members are forbidden from making alterations to their fixtures, shelving, layout, or equipment without first receiving written authorization from the Defendants. This requirement exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

119.    Defendants require that Plaintiffs and Collective Members use the DABC-owned website and system to order alcohol, keep track of Plaintiffs and Collective Members' inventory, and to make the required daily reports. Any requirement to use DABC equipment must be done through rule making authority delegated in Utah Code 32B-2-101, *et. seq.* which has not been done and which therefore exceeds the requirements of the ABCAA.

120.    Defendants require that the Plaintiffs and Collective Members use the DABC-owned credit card terminals and merchant account, which Defendants forced Plaintiffs and Collective Members to place in their establishments. If there are any customer disputes with a credit card purchase that dispute must be directed to and resolved by the Defendants or their staff. Any requirement to use DABC equipment must be done through rule making authority delegated in Utah Code 32B-2-101, *et. seq.* which has not been done and which therefore exceeds the requirements of the ABCAA.

121.    Defendants require that Plaintiffs and Collective Members install and use a DABC-owned point of sale system as a condition of Package Agent employment. Any requirement to use DABC equipment must be done through rule making authority delegated in Utah Code 32B-2-101, *et. seq.* which has not been done and which therefore exceeds the requirements of the ABCAA.

122.    Any issues with the DABC-owned point of sale system or the DABC-owned credit card processors must be addressed by contacting DABC staff. Plaintiffs and Collective Members have no authority to change, bypass, modify, or fix any problems with the DABC-owned equipment, which Plaintiffs and Collective Members are required to use.

123.    Plaintiffs and Collective Members are forbidden from advertising or promoting their own wares. While Defendants may not advertise liquor under the ABCAA, there is no such blanket prohibition for package agents. Defendants' mandated prohibition exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

124.    Plaintiffs and Collective Members are paid a monthly salary, which is non-negotiable, not related to the number of hours worked, and from which Plaintiffs and Collective Members must pay all operating costs of the agency, including but not limited to rents, labor, utilities, insurance and bonds, and maintenance.

125.    Plaintiffs and Collective Members are required to place DABC signage on the outside of their stores, provided by the employer, which identifies them as a "State Liquor Agency." This signage is almost identical to the signage required on state-owned stores, which is "State Liquor and Wine Store".

21

126.    Plaintiffs and Collective Members are forbidden from placing any non-DABC signage on the outside of their stores without DABC approval. While Defendants may decide what is placed outside of state-owned or leased stores, this prohibition exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

127.    Defendants have de-facto control of Plaintiffs' and Collective Members' stores, including the ability to come and go as they please, to dictate the layout of the store, prohibit any changes to the layout, prohibit the signage outside and inside the stores, require the equipment used in the store, and otherwise assert control over where the store is located.

128.    Defendants' control of Plaintiffs' and Collective Members' stores gives Defendants an unpaid lease in Plaintiffs' and Collective Members' property for the sale of Defendants' liquor.

129.    Plaintiffs and Collective Members perform substantially similar if not identical duties to managers of Defendant-owned and -operated stores. These managers work directly for Defendants, are recognized as employees, and are afforded the benefits thereof.

130.    Defendants have structured their relationship with Plaintiffs and Collective Members in such a way that Plaintiffs and Collective Members meet all of the statutory requirements of state store managers and employees.

131.    On or about July 2020 and March 2021, and on other multiple occasions, Plaintiffs and Collective Members advised Defendants of their concern that the level of control exerted has created an employer-employee relationship.

132.    Plaintiffs and Collective Members requested Defendants investigate these claims and properly classify them.

133.    In response, Defendants Tiffany Clason, Cade Meier, Savlador Petilos, and Angela Micklos, affirmatively represented to Plaintiffs and Collective Members that they, the Attorney General's Office, and/or the Utah Labor Commission had investigated the claims and concluded that Plaintiffs and Collective Members were properly classified as independent contractors.

134.    Defendants Cade Meier and Salvador Petilos thereafter represented to and instructed Plaintiffs and Collective Members that they are independent contractors, notwithstanding Plaintiffs' and Collective Members' concerns.

135.    Defendant Cade Meier also represented to Plaintiffs and Collective Members that Sheila Page from the Attorney General's Office had reviewed Plaintiffs' and Collective Members' classifications and had determined that Plaintiffs and Collective Members were independent contractors. Defendant Cade Meier told Plaintiffs and Collective Members to accept the terms of their contract as they were or lose their livelihood(s).

136.    Defendant Angela Miklos represented to Plaintiffs and Collective Members that the Attorney General's Office was reviewing Plaintiffs' and Collective Members' contracts prior to being sent to Plaintiffs and Collective Members, including a review of the Plaintiffs' and Collective Members' independent contractor status.

137.    Defendant Cade Meier represented to Plaintiffs and Collective Members that Defendants would likely not do any business with Package Agents that sued Defendants over misclassification.

138.    These representations were false and misleading and constitute misrepresentations as to Plaintiffs' and Collective Members' employment status.

139.    Plaintiffs and Collective Members have had no choice but to acquiesce to the terms unilaterally imposed by Defendants to maintain their salaries from Defendants.

140.    Defendants allow Plaintiffs and Collective Members to "purchase" DABC-owned liquor on consignment, whereas amounts from the sale of said liquor is automatically remitted to the DABC through the use of the required DABC-owned credit card processing system. DABC withdraws additional funds from Plaintiffs and Collective Members' bank account(s) according to its own accounting practices and procedures. Plaintiffs and Collective Members do not take title to, or ownership of, any alcohol "purchased" on consignment. Plaintiffs and Collective Members sell DABC-owned liquor on behalf of the DABC.

141.    Defendants provide transportation of all liquor to the Plaintiffs and Collective Members' stores, at no cost to Plaintiffs or Collective Members.

142.    Upon information and belief, Defendants source at least some of their liquor from outside of Utah.

143.    Plaintiffs and Collective Members cannot source or otherwise obtain product from anywhere except from Defendants, for which Defendants exclusively set purchase and sale prices. Plaintiffs and Collective Members do not collect any money or profits directly from the sale of DABC-owned liquor except as increases to their consignment amounts from DABC-mandated price changes. Plaintiffs and Collective Members are exclusively compensated through a monthly salary paid by Defendants.

144.    Defendants has the unilateral authority to raise or lower the price of their liquor at any time, which they frequently do. In such instances, any liquor purchased on consignment must

be sold at the new price, and if lower than purchased, the difference must come out of the Plaintiffs' and Collective Members' salaries.

145.   Plaintiffs and Collective Members have only one client—the Defendants—and cannot source their product from any other parties or provide alcohol sale services for any other entity.

146.   Plaintiffs are economically dependent on Defendants.

147.   If the Plaintiffs and Collective Members were to leave the employ of the Defendants, they would no longer be allowed or authorized to sell liquor in the State of Utah.

148.   If the Plaintiffs and Collective Members were to leave the employ of the Defendants, they would need to choose a different livelihood, as working for the Defendants is the only way to perform the services of selling liquor in the State of Utah.

149.   Plaintiffs and Collective Members are not able to make a greater profit by their skill and business acumen in the field of liquor sales.

150.   Plaintiffs and Collective Members are prohibited from receiving tips or other compensation outside of their monthly salaries. While Defendants may make such prohibitions for state store managers and employees, this prohibition exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

151.   Plaintiffs and Collective Members are required, as a matter of law, to collect sales tax amounts from each sale made by them.

152.   Ordinarily independently owned and operated businesses must remit these sales tax amounts to the State of Utah Tax Commission.

153.    Instead of properly allowing Plaintiffs and Collective Members to tender these sales tax amounts, Defendants unilaterally confiscate and misappropriate these sales tax amounts directly from Plaintiffs and Collective Members for their own individual use and purpose. These confiscations and misappropriations exceed the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

154.    Plaintiffs and Collective Members are still obligated to remit the amounts of the sales taxes that have been confiscated by the Defendants. Plaintiffs and Collective Members must do this out of their salaries.

155.    Defendants reimburse Plaintiffs and Collective Members for this improper confiscation of the sales tax amounts. This reimbursement is not consistent, however, and occurs only after several weeks (or sometimes several months). Defendants further impose restrictions on and control this reimbursement by requiring that it only be used as a credit for the additional purchase of alcohol from Defendants. Plaintiffs and Collective Members are not able to recover the amounts of the confiscated sales taxes in the form of money under any circumstances.

156.    Defendants prohibit any political activity by or on behalf of Plaintiffs or Collective Members as a condition of their employment. While Defendants may make such prohibitions for state store managers and employees, this prohibition exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

157.    Defendants list Plaintiffs and Collective Members as "Managers" on Defendants' website along with other Managers who Defendants concede are employees.

158.    Plaintiffs and Collective Members are forbidden from having their own website, which is part of the broader prohibition against any independent advertising or promotion of the

sale and distribution of DABC-owned liquor. This requirement exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

159.    Defendants require Plaintiffs and Collective Members to use specific brown bags for the sale of all liquor, which Defendants provide to Plaintiffs and Collective Members at no cost.

160.    Defendants provide and mandate the use of all signs indicating whether Plaintiffs' and Collective Members' operations are closed or open and all other signs in use by Plaintiffs or Collective Members. Any requirement to use DABC equipment must be done through rule making authority delegated in Utah Code 32B-2-101, *et. seq.* which has not been done and which therefore exceeds the requirements of the ABCAA.

161.    Defendants mandate on which holidays Plaintiffs and Collective Members must operate. Operating on these holidays is non-negotiable. While Defendants may make such mandates of state store managers and employees, this requirement exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

162.    Plaintiffs and Collective Members are forbidden from accepting any gifts or anything of value from any of the manufacturers or representatives of any of the alcohol producers. While Defendants may make such requirements for state store managers and employees, this requirement exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

163.    Despite contracting with entities and not individuals in some instances, Defendants always require that contracted services be performed by specific individuals, namely Plaintiffs and

Collective Members. While Plaintiffs and Collective Members are sometimes allowed to hire additional employees with Defendants' written authorization, Plaintiffs and Collective Members are prohibited from delegating any managerial duties to any other person.

164. Defendants employ a supervisor to oversee the Plaintiffs' and Collective Members' operations. All Plaintiffs' or Collective Members' questions, concerns, or inquiries must go through this supervisor. While Defendants may assert such control of state store managers and employees, this requirement exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

165. Plaintiffs and Collective Members are required to keep all business records in the manner prescribed by and on the forms provided by Defendants. Defendants further mandate how long the business records must be kept by Plaintiffs and Collective Members.

166. Plaintiffs and Collective Members are required to provide DABC liquor to any DABC licensee within the Plaintiffs' or Collective Members' area. Plaintiffs and Collective Members are required to report weekly the sale of alcohol to any DABC licensee, using Defendants' forms and Defendants' processes. While Defendants may make such requirements for state store managers and employees, this requirement exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*

167. All Package Agent records become the property of Defendants as soon as their contract with Defendants is terminated.

168. Defendants have an unrestricted right to enter the Plaintiffs' and Collective Members' property at any time to review the records of the Plaintiffs and Collective Members, check inventory, and for any other reason identified at the exclusive discretion of Defendants.

169.    Defendants can and do require that Plaintiffs and Collective Members perform physical inventory counts of DABC liquor whenever Defendants ask. Such physical inventory counts must take place on Plaintiffs' and Collective Members' time, outside of the Plaintiffs' and Collective Members' authorized store operating hours.

170.    Defendants have business clients and customers throughout the state who purchase Defendants' liquor.

171.    Plaintiffs and Collective Members are required to service theses business clients and customers and do not have autonomy or freedom to refuse. While Defendants may make such mandates of state store managers and employees, this requirement exceeds the statutory requirements of the ABCAA, specifically Utah Code 32B-2-601, *et seq.*, which regulates package agents.

172.    Plaintiffs and Collective Members are further not allowed to solicit or service their own business clients or customers and, instead, are beholden to Defendants and their business clients and customers.

173.    Defendants have structured their relationship with Plaintiffs in such a way that Plaintiffs and Collective Members meet all of the statutory requirements of state store managers and employees.

174.    Because Plaintiffs and Collective Members are classified as independent contractors, Plaintiffs and Collective Members are deprived of a right to organize.

175.    DABC is required to follow the procedures outlined in the Utah Procurement Code, Utah Code 63G-6a-101 *et. seq.*

176.    The Utah Procurement Code requires the DABC to follow the bidding process or other processes defined in the Code in order to procure services of contractors.

177.    DABC is in violation of the Utah Procurement Code by paying Plaintiffs and Collective Members as employees rather than following the requirements of retaining independent contractors under the Utah Procurement Code.

178.    In approximately April 2019, Defendants RuthAnne Oakey Frost and Tim Beardall contacted Plaintiffs and Collective Members demanding repayment of funds that Defendants claimed were overpaid, citing a computational error made by Defendants during the drafting of Defendants' contracts.

179.    During these calls, Defendants represented that the Governor's Office had been notified about the overpayment and that the Governor "wants his money back." Plaintiffs and Collective Members were informed that if they did not send a check to repay the amounts or agree to a repayment plan their contracts with Defendants would not be renewed.

180.    Among other things, Defendants actions were in violation of the Utah Procurement Code, 63G-6a-101 *et. seq.*

181.    Plaintiffs provided each Defendant notice that satisfies the notice requirements under Utah Code 63G-7-401 *et seq*.

## **COLLECTIVE ACTION ALLEGATIONS**

182.    Plaintiffs realleges and incorporates by reference all allegations in all preceding paragraphs.

183.    Plaintiffs brings this action pursuant to 29 U.S.C. § 216(b) on their own behalf and as representatives of individuals similarly situated who are current or former Package Agents.

184.    At all times material, Defendants paid Plaintiffs and Collective Members a fixed monthly compensation.

185.    Defendants subjected all of their Package Agents, including Plaintiffs and the Collective Members, to their policy and practice of misclassifying their Package Agents, who were actually employees, as independent contractors.

186.    Defendants willfully and intentionally subjected all of their Package Agents, including Plaintiffs and the Collective Members, to their policy and practice of not paying their Package Agents one- and one-half times their regular rates of pay for time they spent working in excess of 40 hours in a given workweek, in violation of 29 U.S.C. § 207(a).

187.    At all times material, Plaintiffs and Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully subjecting Plaintiffs and Collective Members to their policy and practice of not paying their Package Agents one- and one-half times their regular rates of pay for time they spent working in excess of forty (40) hours in a given workweek, in violation of 29 U.S.C. § 207(a).

188.    Plaintiffs' claims stated in this complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiffs are identical or substantially similar.

189.    Plaintiffs and Collective Members were each compensated on a fixed monthly rate of compensation for the duration of their employment with Defendants.

190.    Collective Members perform or have performed the same or similar work as Plaintiff.

191.    Defendants' failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiffs or Collective Members.

192.    While Plaintiffs have described Plaintiffs' and Collective Members' job titles as Package Agents, the specific job titles or precise job responsibilities of each Collective Member does not prevent collective treatment.

193.    All Collective Members, irrespective of their particular job requirements and job titles, are entitled to proper overtime wage compensation for all hours worked in excess of forty (40) hours in a given workweek.

194.    Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all of the Collective Members.

195.    As such, Plaintiffs bring this FLSA overtime wage claim as a collective action on behalf of the following class:

> The FLSA Collective Members are all of Defendants' current and former Package Agents who were not paid one- and one-half times their regular rates of pay for time spent working in excess of forty (40) hours in a given workweek.

196.    Defendants' unlawful conduct, as described in this Collective Action Complaint, is pursuant to Defendants' corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

197.    Defendants are aware or should have been aware that federal law prohibited them from not paying their Package Agents—namely, Plaintiffs and the Collective Members—an overtime premium wage for time spent working in excess of forty (40) hours per given workweek.

198.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

199.    Defendants' unlawful conduct was knowing, willful, and part of an intentional scheme to misclassify and defraud Plaintiffs and Collective Members because, among other allegations and upon information and belief, after a Package Agent in Eden, Utah was found to have some DABC liquor and funds missing from the package agency in 2009-2010, the Defendants made specific plans to assert more control over Plaintiffs and Collective Members, thereby establishing an employment relationship, but did not communicate this to Plaintiffs and Collective Members.

200.    This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

201.    Upon information and belief, the individuals similarly situated to Collective Representative include more than thirty (30) employees currently and/or formerly employed by Defendants, and Collective Representative is unable to state the precise number of similarly situated employees because that information is solely in Defendants' possession, custody, or control, but it can be readily ascertained from their employment, payroll, and accounting records.

202.    Notice can be provided to Collective Members by First Class Mail to the last address known to Defendants, via email at the last known email address known to Defendants, and by text message to the last known telephone number known to Defendants.

203.     Plaintiffs and Collective Members are entitled to recover overtime compensation for the hours they worked in excess of forty (40) hours per given workweek for which they were not paid at the federally mandated one- and one-half times their regular rates of pay.

204.     Plaintiffs and Collective Members are also entitled to an amount equal to all of their unpaid wages as liquidated damages. 29 U.S.C. § 216(b).

205.     Plaintiffs and Collective Members are also entitled to recover their attorneys' fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

## COUNT ONE:
## FAIR LABOR STANDARDS ACT – FAILURE TO PAY OVERTIME

206.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

207.     The FLSA mandates employers pay all non-exempt employees a rate of one and one-half the employee's regular rate of pay for any hours in excess of forty (40) in one week.

208.     The FLSA prohibits misclassification of employees as independent contractors to avoid this responsibility.

209.     The FLSA sets forth factual considerations to determine proper classification of an employee or independent contractor.

210.     The FLSA preempts any state law that conflicts with the FLSA's application to a set of circumstances.

211.     At all relevant times, Defendants, including individual Defendants acting outside of their statutory authority, engaged in the regular policy and practice of classifying their Package Agents, including Plaintiffs and Collective Members, as independent contractors when they were in reality employees as defined by the FLSA.

34

212.    Plaintiffs and Collective Members are covered, non-exempt employees of Defendants under the FLSA.

213.    At all relevant times, Defendants, including individual Defendants acting outside of their statutory authority, did not pay Plaintiffs or Collective Members one- and one-half times their regular rates of pay for time spent working in excess of forty (40) hours in a given workweek.

214.    Defendants, including individual Defendants acting outside of their statutory authority, misclassified their Package Agents, including Plaintiffs and Collective Members, as independent contractors to avoid Defendants' obligation to pay their Package Agents, including Plaintiffs and Collective Members, one- and one-half times their regular rates of pay for all hours worked in excess of forty (40) hours per week.

215.    Defendants, including individual Defendants acting outside of their statutory authority, engaged in such conduct in direct violation of 29 U.S.C. § 207(a).

216.    As such, unpaid overtime wages for such time Plaintiffs and Collective Members worked in excess of forty (40) hours per given workweek is owed to Plaintiffs and Collective Members for the entire time they were employed by Defendants.

217.    Defendants, including individual Defendants acting outside of their statutory authority, knew that—or acted with reckless disregard as to whether—their refusal or failure to properly compensate Plaintiffs and Collective Members over the course of their employment would violate federal and state law, and Defendants were aware of the FLSA overtime wage requirements during Plaintiff's and Collective Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

218.    Plaintiffs and Collective Members are therefore entitled to compensation for their unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**COUNT TWO:**
**FRAUDULENT MISREPRESENTATION / INDUCEMENT**

219.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

220.    Defendants made false statements about important facts regarding their employment of Plaintiffs, including but not limited to:

    a.   Misrepresenting to and misclassifying Plaintiffs as independent contractors;

    b.   Misrepresenting to Plaintiffs that Defendants and the Attorney General's Office had investigated Plaintiffs' concerns about misclassification;

    c.   Misrepresenting to Plaintiffs that they were properly classified as independent contractors under Utah and Federal Law; and

    d.   Misrepresenting to Plaintiffs that the Utah State Tax Commission had authorized the collection and use of Plaintiffs' sales tax amounts for purposes other than safekeeping and transferring those amounts to the State of Utah; and

    e.   Specifically, in approximately July 2020, Defendants Cade Meier and Salvador Petilos represented to both Plaintiffs and to the DABC Commission Operations Subcommittee that Cade Meier and Salvador Petilos would perform a thorough investigation of Plaintiffs' work classification, including determining whether the Plaintiffs were employees or independent contractors.

f.  Specifically, in approximately August 2020, Defendant Cade Meier represented to Plaintiffs and to the DABC Commission Operations Subcommittee that Sheila Page from the Attorney General's Office had reviewed the Plaintiffs' classification and had determined that Plaintiffs were correctly classified as independent contractors. Neither Defendants Cade Meier nor Defendant Salvador Petilos nor any other person contacted the Plaintiffs at any time to gather facts in order to perform an investigation.

g.  Specifically, approximately August 2020, Defendant Cade Meier represented to Plaintiffs that Plaintiffs did not need to seek the help of the IRS to determine their worker classification, because Defendant Cade Meier knew that Plaintiffs were correctly classified.

h.  Specifically, in approximately February 2021, Defendant Tiffany Clason represented to Plaintiffs that she would involve Utah Labor Commission and other Government agencies to examine Plaintiffs' worker classification.

i.  Defendant Tiffany Clason represented that she was not aware of any misclassification issues.

j.  Specifically, in approximately June 2020 and again in June 2021, Defendant Angela Micklos represented to Plaintiffs that the new contracts, including the statements that Plaintiffs were independent contractors, were being reviewed by the Attorney General's Office prior to being sent to Plaintiffs.

k.  Specifically, in approximately June 2020, Defendant Angela Micklos represented to Plaintiffs, as an attorney, that there were no problems with

Plaintiffs contracts and that Plaintiffs could either take the contract as it was, or they could walk away, much like a cell phone contract.

l.  Specifically, approximately June 2019, Cade Meier and RuthAnne Oakey Frost represented to Plaintiffs that the collection and use of Plaintiffs sales tax did not need to be listed in the contract, and that if Plaintiffs required such language in the contract, the Defendants and Plaintiffs may need to go separate directions.

m.  Specifically, Cade Meier and RuthAnne Oakey Frost represented to Plaintiffs that the Utah State Tax Commission had approved the Defendants' collection and use of Plaintiffs' sales tax amounts other than for remittance to the State of Utah.

n.  Specifically, approximately March 2017, Man Diep represented that she had investigated the collection and use of Plaintiffs sales tax amounts and had found them to be correct.

o.  Specifically, approximately September 2019, Tim Beardall represented to Plaintiffs that he, as the internal auditor for the DABC, would investigate Plaintiffs' worker classification. Defendant Tim Beardall never reported to Plaintiffs that there was any issue with their worker classification.

221.   These represented statements were made as fact and not opinion.

222.   Defendants made these statements knowing they were false, or Defendants made these statements recklessly and without regard for their truth.

223.   In making these statements, Defendants intended that Plaintiffs would rely on the statements.

224.   Plaintiffs reasonably relied on the statements, in part by reentering into unconscionable and unenforceable contracts on a yearly basis and foregoing their lawful rights to make legal claims for Defendants' misclassification.

225.   In so acting, Defendants violated a number of state and federal laws, the federal laws of which preempt any state law prohibiting Package Agents from receiving state benefits.

226.   Plaintiffs would not have acted in this manner had they been provided true and accurate information from Defendants.

227.   Plaintiffs suffered damages as a result of relying on these statements, including but not limited to:

       a.    unpaid wages, benefits, annual leave, and vacation and sick days;

       b.   withheld health, dental, and vision insurance;

       c.   improper confiscation of sales taxes;

       d.   payment of self-employment taxes, workers' compensation insurance, product insurance, and a yearly bond;

       e.   out-of-pocket costs for DABC point-of-sale equipment;

       f.   liquidated damages, and

       g.   attorneys' fees.

### COUNT THREE:
### FRAUDULENT/NEGELIGENT NON-DISCLOSURE

228.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

229.    Defendants, as employers of Plaintiffs, were in a particular position of superiority and control over Plaintiffs and, therefore, owed a duty to communicate Plaintiffs' entitlement to certain benefits under the law.

230.    Defendants knew or should have known that Plaintiffs were misclassified as independent contractors and failed to disclose it to Plaintiffs.

231.    Defendants knew or should have known that Plaintiffs were entitled to certain benefits as state employees and failed to disclose it to Plaintiffs.

232.    In so acting, Defendants violated a number of state and federal laws, the federal laws of which preempt any state law prohibiting Package Agents from receiving state benefits.

233.    Plaintiffs did not know that they were being misclassified as independent contractors or that they were entitled to certain benefits as state employees.

234.    Because of Defendants' concealment and non-disclosure, Plaintiffs did not and could not learn of their misclassification and entitlement to benefits.

235.    Defendants' non-disclosure was intentional, reckless, and/or negligent.

236.    Defendants' non-disclosure resulted in Plaintiffs being denied state employee benefits for a number of years, and caused Plaintiffs the harms specified herein, including but not limited to:

      a.  unpaid wages, benefits, annual leave, and vacation and sick days;

      b.  withheld health, dental, and vision insurance;

      c.  improper confiscation of sales taxes;

      d.  payment of self-employment taxes, workers' compensation insurance, product insurance, and a yearly bond;

  e. out-of-pocket costs for DABC point-of-sale equipment;

  f. liquidated damages, and

  g. attorneys' fees.

**COUNT FOUR:**
**NEGLIGENT MISREPRESENTATION**

  237. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

  238. Defendants represented to Plaintiffs and Collective Members that important facts regarding their employment of Plaintiffs were true, including but not limited to:

  a. Classifying Plaintiffs as independent contractors;

  b. Representing to Plaintiffs that Defendants and the Attorney General's Office had investigated Plaintiffs' concerns about misclassification;

  c. Representing to Plaintiffs that they were properly classified as independent contractors under Utah and Federal Law; and

  d. Misrepresenting to Plaintiffs that the Utah State Tax Commission had authorized the collection and use of Plaintiffs' sales tax amounts for purposes other than safekeeping and transferring those amounts to the State of Utah; and

  e. Specifically, in approximately July 2020, Defendants Cade Meier and Salvador Petilos represented to both Plaintiffs and to the DABC Commission Operations Subcommittee that Cade Meier and Salvador Petilos would perform a thorough investigation of Plaintiffs' work classification, including determining whether the Plaintiffs were employees or independent contractors.

41

f.  Specifically, in approximately August 2020, Defendant Cade Meier represented to Plaintiffs and to the DABC Commission Operations Subcommittee that Sheila Page from the Attorney General's Office had reviewed the Plaintiffs' classification and had determined that Plaintiffs were correctly classified as independent contractors. Neither Defendant Cade Meier nor Defendant Salvador Petilos nor any other person contacted the Plaintiffs at any time to gather facts in order to perform an investigation.

g.  Specifically, approximately August 2020, Defendant Cade Meier represented to Plaintiffs that Plaintiffs did not need to seek the help of the IRS to determine their worker classification, because Defendant Cade Meier knew that Plaintiffs were correctly classified.

h.  Specifically, in approximately February 2021, Defendant Tiffany Clason represented to Plaintiffs that she would involve Utah Labor Commission and other Government agencies to examine Plaintiffs' worker classification. Defendant Tiffany Clason represented that she was not aware of any misclassification issues at the moment.

i.  Specifically, in approximately June 2020 and again in June 2021, Defendant Angela Micklos represented to Plaintiffs that the new contracts, including the statements that Plaintiffs were independent contractors, were being reviewed by the Attorney General's Office prior to being sent to Plaintiffs.

j.  Specifically, in approximately June 2020, Defendant Angela Micklos represented to Plaintiffs, as an attorney, that there were not problems with

Plaintiffs contracts and that Plaintiffs could either take the contract as it was, or they could walk away, much like a cell phone contract.

k.  Specifically, approximately June 2019, Cade Meier and RuthAnne Oakey Frost represented to Plaintiffs that the collection and use of Plaintiffs sales tax did not need to be listed in the contract, and that if Plaintiffs required such language in the contract, the Defendants and Plaintiffs may need to go separate directions.

l.  Specifically, Cade Meier and RuthAnne Oakey Frost represented to Plaintiffs that the Utah State Tax Commission had approved the Defendants' collection and use of Plaintiffs' sales tax amounts other than for remittance to the State of Utah.

m.  Specifically, approximately March 2017, Man Diep represented that she had investigated the collection and use of Plaintiffs sales tax amounts and had found them to be correct.

n.  Specifically, approximately September 2019, Tim Beardall represented to Plaintiffs that he, as the internal auditor for the DABC, would investigate Plaintiffs' worker classification. Defendant Tim Beardall never reported to Plaintiffs that there was any issue with their worker classification.

239.  These represented statements were made as fact and not opinion.

240.  Defendants' representation of these facts was not true.

241.  Defendants failed to use reasonable care to determine whether the representation was true.

242.  Defendants were in a better position than Plaintiffs to know the true facts.

243.    Defendants had and still have a financial interest in the misclassification of Plaintiffs as independent contractors.

244.    Plaintiffs relied on the representation as described herein, and it was reasonable for them to do so under the circumstances.

245.    Plaintiffs would not have acted in this manner had they been provided true and accurate information from Defendants.

246.    Plaintiffs suffered damage as a result of relying on the representation, including but not limited to:

      a.   unpaid wages, benefits, annual leave, and vacation and sick days;

      b.   withheld health, dental, and vision insurance;

      c.   improper confiscation of sales taxes;

      d.   payment of self-employment taxes, workers' compensation insurance, product insurance, and a yearly bond;

      e.   out-of-pocket costs for DABC point-of-sale equipment;

      f.   liquidated damages, and

      g.   attorneys' fees.

## COUNT FIVE:
## BREACH OF IMPLIED EMPLOYMENT CONTRACT

247.    Plaintiffs reallege and incorporates by reference all allegations in all preceding paragraphs.

248.    Defendants expressly requested Plaintiffs perform work related to the sale of DABC owned liquor throughout the State.

249.    At all relevant times, Plaintiffs worked for Defendants under the terms of an implied contract.

250.    While Defendants entered into a written contract, the written agreement is unenforceable, unconscionable, and against public policy, as it outlines terms that do not comply with the law or with sound public policy, including misclassifying employees as independent contractors thereby denying them the benefits and protections afforded under Utah and Federal Law.

251.    Under the terms of the implied contract, Defendants required Plaintiffs to perform the services of employees, including adhering to Defendants' strict policies regulating the means by which the job of Package Agent is to be performed rather than the outcome of the job.

252.    The terms of the implied contract went beyond the requirements outlined in Utah Code 32B-2-101, *et. seq.*

253.    Defendants required Plaintiffs to perform tasks similar or identical to the tasks performed by Defendants' properly-classified employees.

254.    Defendants' actions created an implied employment contract with Plaintiffs.

255.    Plaintiffs performed their tasks under this implied employment contract, thereby satisfying their obligations under the implied contract.

256.    Defendants continued to misclassify, misrepresent, and conceal the true nature of Plaintiffs' employment and continued to pay Plaintiffs as independent contractors while treating them as employees under the implied employment contract.

257.    Defendants breached the implied employment agreement by failing to adequately compensate Plaintiffs for work performed and by continually misclassifying, misrepresenting and concealing the true nature of Plaintiffs' employment.

258.    As a result of this breach, Plaintiffs have suffered damages, including but not limited to:

      a.   unpaid wages, benefits, annual leave, and vacation and sick days;

      b.   withheld health, dental, and vision insurance;

      c.   improper confiscation of sales taxes;

      d.   payment of self-employment taxes, workers' compensation insurance, product insurance, and a yearly bond;

      e.   out-of-pocket costs for DABC point-of-sale equipment;

      f.   liquidated damages, and

      g.   attorneys' fees.

## COUNT SIX:
## UNJUST ENRICHMENT

259.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

260.    Plaintiffs were fraudulently induced to enter into a void and unconscionable agreement to perform employee services while classified as an independent contractor.

261.    As a result, this agreement is void as a matter of public policy and is unenforceable under Utah law.

262.     Notwithstanding this, Plaintiffs conferred a benefit on Defendants by providing all of the same services to Defendants as Defendants' own employees despite misclassification of Plaintiffs.

263.     Defendants were aware that Plaintiffs conferred this benefit upon Defendants.

264.     Defendants retained this benefit, in part, by continuing to accept these benefits for decades, continually renewing service agreements with Plaintiffs for them to continue providing these benefits, and by continually misclassifying Plaintiffs as independent contractors to avoid having to pay other benefits as described herein.

265.     The circumstances of Defendants retaining this benefit, especially in light of their blatant and willful misclassification, are such that Defendants' retention of this benefit is inequitable and improper without compensating Plaintiffs properly as Defendants do their other employees.

## COUNT SEVEN:
## CIVIL CONSPIRACY

266.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

267.     Defendants acted in concert and had a meeting of the minds to misclassify, defraud, misrepresent, and conceal key facts to continue inducing Plaintiffs to enter into void and unenforceable agreements that improperly compensate Plaintiffs.

268.     This misclassification, fraud, and misrepresentation were unlawful, overt acts.

269.     As a proximate result of these unlawful, overt acts, Plaintiffs have suffered damages, including but not limited to:

      a.   unpaid wages, benefits, annual leave, and vacation and sick days;

      b.   withheld health, dental, and vision insurance;

      c.   improper confiscation of sales taxes;

      d.   payment of self-employment taxes, workers' compensation insurance, product insurance, and a yearly bond;

      e.   out-of-pocket costs for DABC point-of-sale equipment;

      f.   liquidated damages, and

      g.   attorneys' fees.

### COUNT EIGHT:
### FAILURE TO PAY BENEFITS - UTAH CODE § 49-11-101, *ET SEQ.*

270.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

271.     Plaintiffs are employees of Defendants as a matter of Federal and Utah law.

272.     Specifically, Plaintiffs are employees of Defendants under 26 U.S.C. § 3401 and 26 CFR § 31.3401(c)-1, and under the Patient Protection and Affordable Care Act, 42 U.S.C. § 300gg-11, *et. seq.* and as interpreted by the United States Supreme Court.

273.     The definition of employee under the Patient Protection and Affordable Care Act and under the Internal Revenue Code preempt any state law that concludes Plaintiffs are not employees.

274.     In structuring their employment relationship with Plaintiffs, Defendants created a state store manager or state employee relationship with Plaintiffs.

275.    Defendants so exceeded and misused the statute creating the role of package agents that Plaintiffs are not package agents of Defendants.

276.    Plaintiffs are entitled to the same benefits as other similarly situated State employees.

277.    Plaintiffs have not received the benefits to which they are entitled. This harm is ongoing as Defendants continue to withhold these benefits from Plaintiffs.

278.    Plaintiffs bring this cause of action regarding a benefit, right, obligation, or employment right pursuant to Utah Code § 49-11-613.

279.    Plaintiffs were not aware that they had been improperly denied benefits because they had relied on the misrepresentations, fraud, or intentional nondisclosure of the Defendants that Defendants and the Attorney General's Office had reviewed their situation and had determined that they were independent contractors, ineligible for benefits under Utah Code Title 49.

280.    Because of these misrepresentations, Plaintiffs did not know and should not have known of their claims for unpaid benefits.

281.    Pursuing administrative remedies under Utah Code § 49-11-613 would be futile and serve no legitimate purpose because the relevant stakeholders have already upheld Defendants' misclassification of Plaintiffs as independent contractors and because independent contractors are not eligible for benefits.

282.    Specifically, Plaintiffs contacted the office of Defendant John Barrand in approximately June 2021 to determine how Human Resource Management and the Utah State Retirement and Insurance Act had classified the Plaintiffs. Plaintiffs were told that Human

Resource Management and consequently the Utah State Retirement and Insurance Act, would defer to the DABC for Plaintiffs' classification, which is as independent contractors.

283.    Because Plaintiffs have been denied the benefits they are entitled to, they have suffered damages, which damages are ongoing.

WHEREFORE, Plaintiffs, individually, and Collective Representative, on behalf of all other similarly situated persons, request that this Court grant the following relief in Plaintiff's and the Collective Members' favor, and against Defendants:

A.    For the Court to declare and find that the Defendants committed one or more of the following acts:

i.    violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay proper overtime wages;

ii.    willfully violated overtime provisions of the FLSA, 29 U.S.C. § 207;

B.    For the Court to award damages for all unpaid overtime compensation due and owing to Plaintiffs and the Collective Members for time they spent working in excess of forty (40) hours per given workweek in an amount to be proven at trial, but not less than $139,593.44;

C.    For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), in amounts to be determined at trial, but not less than $139,593.44;

D.    For the Court to award damages for all unpaid benefits due to Plaintiffs as employees in an amount to be proven at trial, but not less than $5,056,800.00;

E.    For the Court to award damages for all confiscation of sales taxes in an amount to be proven at trial, but not less than $635,708.90;

F.      For the Court to award damages for all unpaid annual leave in an amount to be proven at trial, but not less than $1,931,044.67;

G.      For the Court to award damages for all vacation and sick days Plaintiffs and Collective Members are required to provide their employees in an amount to be proven at trial, but not less than $292,767.36;

H.      For the Court to award damages for all unpaid health, dental, vision, and other insurance benefits in an amount to be proven at trial, but not less than $387,105.80;

I.      For the Court to award damages for the mandatory use of Defendants' point-of-sale equipment in an amount to be proven at trial, but not less than $1,000 per month of use;

J.      For the Court to award damages for the mandatory payment of bonds in an amount to be proven at trial, but not less than $19,354.00;

K.      For the Court to award damages for Plaintiffs' and Collective Members' payment of insurance premiums in an amount to be proven at trial, but not less than $36,550.00;

L.      For the Court to award prejudgment and post-judgment interest on any damages awarded;

M.      For the Court to award Plaintiffs' and the Collective Members' reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. § 216(b) and all other causes of action set forth in this Complaint;

N.      For the Court to provide reasonable incentive awards to Collective Representatives to compensate them for the time they spent attempting to recover wages for the Collective Members and for the risks they took in doing so; and

O.      Such other relief as is supported by the evidence and that this Court deems just and proper.

## **REQUEST FOR COLLECTIVE ACTION CERTIFICATION**

As to Count I of this Complaint, Plaintiffs request that the Court designate Count One of this action as a collective action on behalf of the FLSA Collective Members and promptly issue a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to timely assert FLSA claims in this action by filing individual Consent to Join Forms pursuant to 29 U.S.C. § 216(b).

## **JURY TRIAL DEMAND**

Plaintiffs hereby demands a trial by jury on all issues so triable.

DATED this _____ day of September, 2021.

STEELE ADAMS HOSMAN

/s/_____
Chase A. Adams
Erika M. Larsen
*Attorneys for Plaintiff*


OLSON HARNISH LAW, PLLC

/s/_____
Ephraim Olson
*Attorneys for Plaintiff*