JAQUALIN FRIEND PETERSON (6226)
ADAM S. KUNZ (7915)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
E-mail: jfpeterson@agutah.gov
E-mail: askunz@agutah.gov
*Attorneys for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LEEANNE MAXFIELD, an individual, and on behalf of all others similarly situated; JAY LAYTON, an individual, and on behalf of all others similarly situated; CHEREE KAHRS, an individual, and on behalf of all others similarly situated; JODI ROWLEY, an individual, and on behalf of all others similarly situated; BARBARA ADAMS, an individual, and on behalf of all others similarly situated; MICHAEL WYRICK, an individual, and on behalf of all others similarly situated; VICTORIA BOWER, an individual, and on behalf of all others similarly situated; HEATHER DAWN HART, an individual, and on behalf of all others similarly situated; BOYD BROTHERSEN, an individual, and on behalf of all others similarly situated; SAMMI WILCOX, an individual, and on behalf of all others similarly situated; ALISON CICALA, an individual, and on behalf of all others similarly situated; CALVIN OCKEY, an individual, and on behalf of all others similarly situated; LISA OCKEY, an individual, and on behalf of all others similarly situated., <br><br> Plaintiffs, | **REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> Case No. 4:21-cv-00099-DN-PK <br><br> Judge David Nuffer <br> Magistrate Judge Paul Kohler |

|  |  |
|---|---|
| v. | |
| UTAH DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, as a subdivision and/or agency of the STATE OF UTAH; CADE MEIER an individual; TIFFANY CLASON, an individual; JEFF L. COLVIN, an individual; SALVADOR PETILOS, an individual; ANGELA MICKLOS, an individual; RUTHANNE OAKEY FROST, an individual; TIM BEARDALL, an individual; MAN DIEP, an individual; JOHN BARRAND, an individual; and DOES 1-10, inclusive, | |
| Defendants. | |

Defendants Utah Department of Alcoholic Beverage Control (the "DABC"), Cade Meier, Tiffany Clason, Jeff L. Colvin, Salvador Petilos, Angela Micklos, RuthAnne Oakey Frost, Tim Beardall, Man Diep, John Barrand (referred to collectively as "Defendants"), by and through their counsel, Jaqualin Friend Peterson and Adam S. Kunz, Assistant Utah Attorneys General, hereby submit this Reply in Support of their Motion to Dismiss.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 4

I.    DEFENDANTS' MOTION TO DISMISS HAS NOT BEEN CONVERTED INTO
A SUMMARY JUDGMENT MOTION BY VIRTUE OF THE ATTACHMENTS ..... 4

II.    THE FLSA DOES NOT PREEMPT THE ABCA ........................................................ 6

III.    PLAINTIFFS MEET THE FLSA SALARY TEST ...................................................... 8

IV.    THE FLSA PREEMPTS PLAINTIFFS' STATE COMMON LAW CLAIMS
SINCE ALL DEPEND ON FINDING DEFENDANTS VIOLATED THE FLSA ...... 13

V.    THE UGIA HAS NOT BEEN WAIVED .................................................................... 16

VI.    PLAINTIFFS ASSERTIONS OF FRAUD AND WILLFULNESS ARE
INSUFFICIENT AND IMPLAUSIBLE ........................................................................ 17

    A.  Plaintiffs Fraud/Willfulness Allegations Lack Requisite Specificity ...................... 18

    B.  Plaintiffs' Fraud Allegations Are Not Plausible ...................................................... 19

VII.    PLAINTIFFS' BARRED UGIA CLAIMS ARE NOT EQUITABLE CLAIMS .......... 24

VIII.  THE INFERENCES PLAINTIFF ATTEMPTS TO DRAW FROM THE
COMPLAINT'S ALLEGATIONS ARE NOT REASONABLE ................................. 25

IX.    PLAINTIFFS' BREACH OF IMPLIED CONTRACT CLAIM IS IMPLAUSIBLE ... 27

CONCLUSION............................................................................................................. 28

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ackerman v. Coca–Cola Enters., Inc.*,
   179 F.3d 1260 (10th Cir. 1999) ................................................................ 7

*Armed Forces Ins. Exch. v. Harrison*,
   2003 UT 14, 70 P.3d 35 ........................................................... 17, 18

*Armer Texas Trust v. BrazellEyeglasses*,
   2017 UT App 35, 97 P.3d 604 ................................................................ 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................... 6, 19, 27

*Baden-Winterwood v. Life Time Fitness, Inc.*,
   566 F.3d 618 (6th Cir. 2009) ................................................................ 11

*Baker v. Flint Eng'g & Construc. Co.*,
   137 F.3d 1436 (10th Cir. 1998) ................................................................ 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................... 19, 20

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 504 (1992) ................................................................ 6

*Coleman v. Utah State Land Bd.*,
   795 P.2d 627 (Utah 1990) ................................................................ 16

*Coroles v. Sabey*,
   2003 UT App 339 ................................................................ 18

*Curtis v. Loether*,
   415 U.S. 189 (1974) ................................................................ 25

*Ellis v. J.R.'s Country Stores, Inc.*,
   779 F.3d 1184 (10th Cir. 2015) ................................................................ 8

*Friedman v. Kennard*,
   248 Fed. Appx. 918 (10th Cir. 2007) ................................................................ 9

iv

*Gade v. National Solid Wastes Management Assn.*,
   505 U.S. 88 (1992) ................................................................................................ 7

*Gallagher v. Shelton*,
   587 F.3d 1063 (10th Cir. 2009) ........................................................................ 19

*GFF Corp. v. Assoc. Wholesale Grocers, Inc.*,
   130 F.3d 1381 (10th Cir. 1997) ..................................................................... 2, 5

*Granholm v. Heald*,
   544 U.S. 460 (2005) ............................................................................................. 6

*Hall v. Utah State Dep't of Corr.*,
   2001 UT 34, 24 P.3d 958 (Utah 2001) ........................................................... 16

*Hartford Cas. Ins. v. Swapp L., PLLC*,
   358 F. Supp. 3d ..................................................................................................... 5

*HKS Architects Inc. v. MSM Enterprises LTD*,
   2021 UT App 70, 496 P.3d 228 ................................................................... 21, 24

*Holt v. Utah State Road Commission*,
   511 P.2d 1286 (Utah 1973) ............................................................................... 16

*Karlson v. Action Process Service & Private Investigations, LLC*,
   860 F.3d 1089 (8th Cir. 2017) ............................................................................ 7

*Marchant v. Nat'l Reserve Co.*,
   103 Utah 530, 137 P.2d 331 (1943) ................................................................. 25

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ............................................................................................. 7

*Paradise Valley Investigation & Patrol Services, Inc. v. United States District Court*,
   521 F.2d 1342 (9th Cir. 1975) ......................................................................... 25

*Ray v. Aztec Well Service Co.*,
   748 F.2d 888 (10th Cir. 1984) ............................................................................ 5

*Roemer v. Board of Public Works*,
   426 U.S. 736 (1979) ............................................................................................. 5

*Schaefer v. Ind. Mich. Power Co.*,
   358 F.3d 394 (6th Cir. 2004) ........................................................................... 11

*Scott v. Universal Sales, Inc.*,
    2015 UT 64, 356 P.3d 1172 ............................................................... 17

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................. 9

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ........................................................... 9

*Taylor on Behalf of Taylor v. Ogden City School Dist.*,
    927 P.2d 159 (Utah 1996) ................................................................ 16

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on FLSA,
    (Jan. 16, 2009), 2009 WL 649020 ..................................................... 11

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on FLSA,
    (July 9, 2003), 2003 WL 23374601 ................................................... 10

*United States v. Coffman*,
    638 F.2d 192 (10th Cir. 1980) ........................................................... 5

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947) ......................................................................... 7

*Whitehead v. Shattuck*,
    138 U.S. 146 (1891) ......................................................................... 25

*Wirtz v. Jones*,
    340 F.2d 901 (5th Cir. 1965) ........................................................... 25

STATUTES

29 U.S.C. § 216(b) .................................................................................. 7

U.S. Const., Art. VI, cl. 2 ....................................................................... 6

Utah Code § 32B-1-104(1) ................................................................ 6, 11

Utah Code § 32B-2-605(1) .................................................................... 15

Utah Code § 49-11-613 .......................................................................... 26

Utah Code § 63G-7-401 ......................................................................... 21

Utah Code § 63G-7-201(4)(h) ................................................................. 16

Utah Code § 63G-7-102(11) ................................................................. 19

RULES

Fed. R. Civ. P. 15 ................................................................................ 26

Fed. R. Evid. 201(b) .............................................................................. 5

Utah R. Civ. P. 9(c) ................................................................... 17, 18, 19

REGULATIONS

29 C.F.R. § 541.602(a) ..................................................................... 9, 10

*Defining & Delimiting the Exemptions*,
    69 Fed. Reg at 22178 ..................................................................... 11

Utah Admin. Code R82-2-301(2) ......................................................... 11

OTHER AUTHORITIES

27A Am.Jur.2d Equity §§ 39–45, 48, 49 (2000) ................................. 25

**INTRODUCTION**

Plaintiffs' legal theories rest on the faulty framework of incorrect legal conclusions about the effect of the FLSA test for independent contractor versus overtime eligible employee. The Opposition attempts to preserve the framework and cloud the dispositive arguments about overtime claims with shallow straw men about the word "employee" and red herrings about tacit concessions. Plaintiffs' overtime claims do not support Plaintiffs other claims, and Plaintiffs' overtime claims fail under the weight of Plaintiffs' reasonably plausible allegations, their package agency contracts, and Utah statutes and regulations that inform the issue of plausibility.

This Reply strives to support Defendants' Motion to Dismiss without unnecessarily repeating it's arguments. Where Plaintiffs' Opposition is simply wrong, Defendants rely, as much as possible, on the contrast with the Motion's better arguments to prevail or make minimal summary references. Where appropriate, the Reply expands arguments or legal support. For the most part, this Reply focuses on exposing flaws in the Opposition by refuting faulty logic, contradicting misstated allegations, and correcting legal arguments.

Plaintiffs Opposition asserts the incorrect legal conclusion that the FLSA invalidates or voids contracts if an employer fails to pay overtime to an entitled worker. It does not. The FLSA mandates that the employer pay damages to the entitled worker, but it does not invalidate a contract that defines other aspects of the relationship between the employer and employee.

Neither does the FLSA's independent contractor test override the meaning of the word *employee* in state statutes, nor determine whether a worker gets benefits from the State of Utah. The terms *employee* and *independent contractor* are used to summarize the results of an FLSA legal test that, in some circumstances, can determine whether-or-not the FLSA mandates

overtime wages for a specific worker. However, that specific FLSA test does not impose a preclusive comprehensive definition on the word *employee* to override or void the meaning and intent of every other state or federal law that uses the word *employee*. The FLSA certainly cannot void Utah's Alcoholic Beverage Control Act ("ABCA") or the Utah State Retirement and Insurance Benefit Act, even if it does require the DABC to pay some workers overtime wages for working overtime hours. Plaintiff's Opposition incorrectly insists that the Court must accept the asserted legal conclusions as plausible facts, and wrongly argues for incredible results without any supporting legal precedent. The Court is not required to support the faulty framework of legal conclusions just because Plaintiff alleged.

The Opposition also argues incorrectly that if the Court considers Plantifffs' contracts along with Utah's statutes and regulations, the Court must treat the Rule 12 motion as a Rule 56 summary judgment, and must allow "all the material that is pertinent to the motion." To the contrary, the Court may rely on the contracts and matters of public record to prevent "a plaintiff with a deficient claim" from "surviv[ing] a motion to dismiss simply by not attaching a dispositive document upon which plaintiff relied[.]"[1] Here, the allegations of Plaintiffs' Complaint, considered in context with the contracts referenced therein, and the ABCA and its implementing regulations, which this Court can properly consider because all are at the core of Plaintiffs' dispute, lay out a clear and dispositive reality.

Plaintiffs are package agents under ABCA. They hold contracts empowering them to own and operate a package agency which sells alcohol in sealed containers. Per their contracts, Plaintiffs receive a guaranteed monthly payment that satisfies the FLSA's salary basis test and

---

[1] *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).

qualifies Plaintiffs for the FLSA's administrative exemption. Because Plaintiff Maxfield holds two package agency contracts, she receives a payment large enough to also fall under FLSA's highly compensated employee exemption from the requirement for DABC to pay her overtime wages. In addition to receiving a fixed, monthly payment, Plaintiffs' status as package agents means that they can purchase and sell liquor within Utah's state-controlled alcohol distribution system. Plaintiffs have entered into multiple yearly package agency agreements, all of which have expressly identified Plaintiffs as independent contractors. Plaintiffs did not dispute this designation until July 2020, at which time they began to claim and argue that the level of control exerted over them created an employer-employee relationship under the FLSA test for independent contractors and entitled them to receive overtime wages. Some Defendants verbally disagreed, asserting that Plaintiffs are properly classified as independent contractors. It is because of this disagreement that Plaintiffs now sue.

Plaintiffs' Opposition does not alter these facts or their legal significance. To the contrary, Plaintiffs' claims fail because the legal theories at their foundation crumble under the weight of controlling law applied to the reasonably plausible facts properly under consideration in this motion process. Specifically, the FLSA does not preempt the ABCA because the ABCA does not prescribe anything that the FLSA does not also permit. Plaintiffs meet the salary test, along with the other requisite conditions for the administrative exemption, and in the instance of Plaintiff Maxfield, also the highly compensated exemption. Further, none of Plaintiffs' alleged expenditures fit the Department of Labor's definition of an "improper deduction," and so, cannot reduce Plaintiffs' salary basis. Likewise, Plaintiffs' factual allegations establish that their state common law claims all depend on whether Plaintiffs were misclassified under the FLSA. They

are therefore preempted. Nor can Plaintiffs escape the UGIA, even as it relates to the individual Defendants. All must be dismissed because Plaintiffs' fraud and willfulness claims lack specificity and are implausible. Further, where Plaintiffs primarily seek to recover overtime pay and benefits, theirs is not an equitable action, and so is still subject to the UGIA—which has not been waived because only the UGIA, itself, determines what is waived. Finally, the inferences Plaintiffs attempt to draw from the Complaint's allegations are not reasonable. Plaintiffs' claims of civil conspiracy, breach of implied contract, and futility all fail. There being no other cognizable claims, this Court must dismiss Plaintiffs' Complaint in full.

## ARGUMENT

### I.    DEFENDANTS' MOTION TO DISMISS HAS NOT BEEN CONVERTED INTO A SUMMARY JUDGMENT MOTION BY VIRTUE OF THE ATTACHMENTS

At the outset, Defendants clarify that they do *not* reference the ABCA with the aim of asserting that Plaintiffs, are indeed, independent contractors. To the contrary, for purposes of this Motion only, Defendants assume that Plaintiffs' factual allegations supporting that they should be classified under the FLSA as employees of the DABC rather than overtime exempt independent contractors are true, and that Plaintiffs would be entitled to overtime pay under the FLSA *unless exemptions apply*. And that is the crux of this Motion. Plaintiffs perform work in an industry (i.e., liquor) that is highly regulated, pursuant to the ABCA and its implementing regulations. Further, this regulatory structure is unique in that it delineates, in unusual detail, the obligations and responsibilities between Plaintiffs and Defendants as it relates to their working relationship. And, significantly, Plaintiffs working relationship with Defendants under the FLSA is the central focus of Plaintiffs' claims.

Plaintiffs would have this Court ignore these facts; despite that they meet all prerequisites allowing them to be judicially noticed. Specifically, the ABCA and its implementing regulations are both generally known within the territorial jurisdiction of this Court and capable of accurate and ready determination by resort to sources—i.e., Utah Code and Utah Administrative Rules—whose accuracy cannot reasonably be questioned.[2] Moreover, it is well established that courts may take judicial notice of statutes and regulations.[3] Further, if a party requests that a court take judicial notice of a fact and supplies the court with the necessary information to do so, the court must take judicial notice of the fact.[4] Thus, this Court can (and should) consider the ABCA and its implementing regulations, though they exist outside the pleadings.

Likewise, the Court may also consider Plaintiffs' contracts. Plaintiffs concede that they entered into yearly contracts with DABC.[5] "If a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."[6] Plaintiffs do not contend that the contracts are not authentic. Rather, they allege they are unconscionable and unenforceable, and it is this contention which forms the basis of their claims for breach of an implied contract and unjust enrichment.[7] Thus, the contracts are central to Plaintiffs' Complaint and the Court may consider them in deciding this Motion.

---

[2] Utah Fed. R. Evid. 201(b), which actually uses an "or" conjunctive, so the party need only satisfy one prerequisite.
[3] *United States v. Coffman*, 638 F.2d 192, 194 (10th Cir. 1980); *see also Roemer v. Board of Public Works*, 426 U.S. 736, 742 n.4 (1979); *Ray v. Aztec Well Service Co*., 748 F.2d 888, 889 n.2 (10th Cir. 1984).
[4] Fed. R. Evid. 201(c).
[5] Compl., Doc. 2, ¶¶ 99, 224; *see also* Ds' Motion, Exs. 1-4, Type 2/3 Package Agency Contracts.
[6] *GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1384-1385 (10th Cir. 1997); *see also Hartford*, 358 F. Supp. 3d at 1213.
[7] Compl., Doc. 2, ¶¶ 224, 250, 260-61, 264.

## II.   THE FLSA DOES NOT PREEMPT THE ABCA

Plaintiffs have provided this Court with no legal analysis for their bald assertion that the FLSA preempts the ABCA, which again, is this state's comprehensive statute governing the storage, sale, offer for sale, furnishing, consumption, manufacture, and distribution of alcohol within the state of Utah.[8] Nor can they. As already noted, Section 2 of the Twenty-first Amendment to the Constitution grants to the States the broad power to regulate the distribution of intoxicating liquors within their borders. That includes, among other things, banning the consumption and sale of liquor outright, taking control over the liquor distribution system themselves, or creating tiered distribution systems separating manufacturers/suppliers, distributors, and retailers.[9] What Plaintiffs would have this Court do is take their "legal conclusion" that they have been misclassified as independent contractors and treat it as fact, and then bootstrap that alleged legal conclusion as a basis to find that there is a conflict between the FLSA and the ABCA. But this court need not accept a complainant's legal conclusion couched as a factual allegation.[10]

There is law supporting the notion that when a state statute, administrative rule, or common-law cause of action conflicts with a federal statute, it is without effect.[11] On the other hand, it is equally clear that the Supremacy Clause does not give unelected federal judges carte blanche to use federal law as a means of overriding state law willy-nilly. Because of the role of States as separate sovereigns in our federal system, we have long presumed that state laws— particularly those that are within the scope of the States' historic police powers, liquor regulation

---

[8] Utah Code § 32B-1-104(1).
[9] *Granholm v. Heald*, 544 U.S. 460, 484 (2005).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009).
[11] U.S. Const., Art. VI, cl. 2; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).

is—are not to be pre-empted by a federal statute unless it is the clear and manifest purpose of Congress to do so.[12] Stated another way, "if the [federal] statute's terms can be read sensibly not to have a pre-emptive effect, the presumption controls and no pre-emption may be inferred."[13]

Here, the purposes of the FLSA do not conflict with the ABCA as Plaintiffs assert. First, the FLSA does not prohibit persons, or a state, from creating independent contractor relationships, which is Plaintiffs' primary basis for claiming conflict. Indeed, it is understood that FLSA wage and hour requirements do not apply to independent contractors, and this is why much of the litigation centers on that issue.[14] Nor does the FLSA speak to an employee's responsibilities or status under state law, or for that matter, the conscionability of any statutorily or contractually created working arrangement. Rather, the FLSA is a purely remedial statute, providing covered workers with a legal remedy; that is, recovery of minimum wage or overtime pay in specified circumstances, and an equal amount of liquidated damages if the employer knowingly shirked the overtime wage obligation.[15] In other words, this Court has no authority under the guise of the FLSA to ignore the parties' contracts or render them null and void.

Further, notwithstanding its remedial nature, the FLSA also makes clear that "not all workers require [] the same kind of protection"[16] under the statute. Notably, as is relevant here, the FLSA recognizes a number of exemptions from its minimum wage and overtime laws. The Tenth Circuit has also said these exemptions must be given full force:

---

[12] *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

[13] *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 116–117 (1992) (SOUTER, J., dissenting).

[14] *See Karlson v. Action Process Service & Private Investigations, LLC*, 860 F.3d 1089, 1092 (8th Cir. 2017) ("FLSA wage and hour requirements do not apply to true independent contractors."); *Baker v. Flint Eng'g & Construc. Co.*, 137 F.3d 1436 (10th Cir. 1998) (reaching similar conclusion); *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947) (holding that the FLSA "was obviously not intended to stamp all persons as employees").

[15] 29 U.S.C. § 216(b).

[16] *Ackerman v. Coca–Cola Enters., Inc.*, 179 F.3d 1260, 1263 (10th Cir. 1999).

> [i]t is not a proper use of the ["whole-text"] canon to say that since the overall purpose of the statute is to achieve x, any interpretation of the text that limits the achieving of x must be disfavored.... [L]imitations on a statute's reach are as much a part of the statutory purpose as specifications of what is to be done.[17]

It is the FLSA exemptions that are the focus of Defendants' motion to dismiss Plaintiffs' FLSA claim for overtime pay.[18] Thus, because the ABCA does not embody anything that the FLSA does not also permit, there is no conflict between the two statutes and no basis for this Court to infer FLSA preemption of the ABCA.

## III.   PLAINTIFFS MEET THE FLSA SALARY TEST

In addressing Defendants' FLSA exemption arguments, Plaintiffs would have this Court ignore many of their unambiguous allegations in the Complaint, indicating that Plaintiffs both *manage* and *sell* liquor in private locations, away from both DABC and the individual Defendants. They would also have this Court disregard certain unfavorable allegations regarding Plaintiffs duties and discretion to make significant decisions about the operation and management of their liquor stores, now that Defendants have shown that those assertions undermine Plaintiffs' claim for overtime pay. But this Court does not have to turn a blind eye, nor does it have to accept Plaintiffs' conclusory contention that Defendants control every aspect of Plaintiffs' jobs leaving them with no autonomy, particularly where, as here, such a conclusion is contradicted by Plaintiffs own allegations, their contracts, and the statute and regulations that govern the parties' relationship. Indeed, the Courts have long recognized that because a court must accept as true the allegations in a complaint, a plaintiff can plead herself out of court by

---

[17] *Ellis v. J.R.'s Country Stores, Inc.,* 779 F.3d 1184, 1205 (10th Cir. 2015) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 168 (2012)).

[18] To be clear, Plaintiffs' Complaint does not assert a claim for minimum wage, only overtime pay.

alleging facts that establish the defendant's entitlement to prevail.[19] This is what has happened here. Plaintiffs have affirmatively plead facts that show they are exempt.

This is particularly true as it relates to Plaintiffs' compensation. Indeed, no factual inquiry is necessary where Plaintiffs' Complaint and contracts plainly manifest that they meet the salary test for the administrative exemption, and in the case of Plaintiff Maxfield, she also meets the salary test for the highly compensated employee exemption.[20] Under DOL regulations, an employee is paid on a "salary basis" if the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."[21] Further, subject to certain exceptions (none apply here), "an exempt employee must receive the full salary for any week in which the employee performs any work **without regard to the number of day or hours worked**."[22]

Here, Plaintiffs have already asserted this is the case. They allege both that "they were paid a fixed salary per month" **and** that their salary was "**not related to the number of hours worked**."[23] Plaintiffs' contracts also affirm that Plaintiffs meet the salary basis test. Specifically, the contracts establish that for each fiscal year that they operate under a package agency contract, Plaintiffs receive a predetermined, fixed, monthly amount, which both exceeds the administrative

---

[19] *See e.g., Friedman v. Kennard,* 248 Fed. Appx. 918, 921 (10th Cir. 2007) (When a plaintiff's allegations are internally contradictory, dismissal of the complaint is appropriate because "[plaintiff]'s own pleading tends to defeat his claim."); *Tamayo v. Blagojevich,* 526 F.3d 1074 (7th Cir. 2008) (plaintiff pled herself out of court by including facts that undermined her claims); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 989 (9th Cir. 2001) (Plaintiff pleaded himself out of court by attaching the arbitration award which showed he was not entitled to relief).

[20] Notably, Plaintiffs do not allege that they have not received the compensation that their contracts require.

[21] 29 C.F.R. § 541.602(a).

[22] *Id.* § 541.602(a)(1).

[23] Compl., Doc 2, ¶¶ 53, 124, 183, 189.

exemption threshold and is not subject to reduction, or change, during each yearly contract period.[24] In other words, Plaintiffs meet the salary test because they receive a guaranteed monthly payment.[25]

In an attempt to undercut the significance of these facts, Plaintiffs point to three different categories of expenditures and ask this Court to accept their unsupported contention that these can be applied to reduce their salary-basis. But DOL's regulations, providing guidance for determining whether an employee's salary is subject to reduction and, hence, fails the salary-basis test, make clear that none of Plaintiffs alleged expenditures are as improper salary reductions.[26] This is because in all instances describing the effect of improper deductions, a critical component is that the deductions must be made ***by the employer***. The regulations plainly state: "***An employer who makes improper deductions*** from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis."[27] "If the facts demonstrate that ***the employer has an actual practice of making improper deductions***, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions."[28] Further, the regulations also make clear that improper deductions must relate to the "***quality or quantity of the work performed***,"[29] which as manifest by the courts

---

[24] *See* Ds' Motion, Exs. 1-4.

[25] This conclusion is consistent with the Secretary's interpretive guidance. The overriding issue is whether exempt employees are "paid according to a pay plan under which they are, in fact, guaranteed to receive no less than 1/26th of their annual salary each biweekly pay period, except for deductions otherwise expressly permitted." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on FLSA (July 9, 2003), 2003 WL 23374601, at *2 (emphasis added).

[26] *Id.* §§ 541.602; 541.603.

[27] *Id.* § 541.603(a).

[28] *Id.* § 541.603(b).

[29] *Id.* § 541.602(a). *See also* subsection (b): "An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the

and the Secretary's interpretive guidance generally speaks to attendance or performance.[30] None

of Plaintiffs' alleged expenditures fit these definitions.

First, as it regards the money that Plaintiffs expend on rents, labor, utilities, insurance and

bonds, and maintenance, Plaintiffs have made clear that none of these expenditures are deducted

*by* or even paid *to* Defendants. Not only is this evident from Plaintiffs argument in their

Opposition, but Plaintiffs' allegations, their contracts, and the ABCA and its implementing

regulations establish that DABC does not (indeed, cannot) own the facilities in which Plaintiffs

operate their liquor stores.[31]Thus, there is no question that the rents, labor, and other

expenditures incurred by Plaintiff to maintain their liquor stores are not deducted by Defendants

but are paid elsewhere into the pockets of other private persons (i.e., Plaintiffs' employees,

private landlords, utility companies, insurers, etc.). Nor should the Court be persuaded by

Plaintiffs' argument that these expenditures drastically diminish their take-home pay. Paying

bills to third parties is not the standard for an improper deduction. Plaintiffs' allegations must

establish that Defendants have control over the monies being deducted, which they don't.

Defendants pay out the salary and do not force the Plaintiffs to pay their bills with it. Moreover,

taking Plaintiffs' interpretation of what should count as an "improper deduction" to its logical

---

operating requirements of the business. If the employee is ready, willing and able to work, deductions may
not be made for time when work is not available."

[30] *See e.g., Schaefer v. Ind. Mich. Power Co.,* 358 F.3d 394, 400 (6th Cir. 2004) (Exempt status "is only
affected by monetary deductions for work absences and not by non-monetary deductions from fringe
benefits such as personal or sick time.*"); Baden-Winterwood v. Life Time Fitness, Inc.,* 566 F.3d 618 (6th
Cir. 2009), rehearing and rehearing en banc denied, on remand 2010 WL 143334 (DOL regulations did not
allow for the reduction of guaranteed pay to recoup overpayments made under a purposeful, incentive-driven
bonus compensation plan that was tied to individual performance and varied based on the quality and
quantity of each individual's work.).*see also Defining & Delimiting the Exemptions,* 69 Fed. Reg. at 22178.
Employers can "make deductions for absences from an exempt employee's leave bank in hourly increments,
so long as the employee's salary is not reduced." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on
FLSA (Jan. 16, 2009), 2009 WL 649020, at *2 (emphasis added).

[31] *See* Compl., Doc. 2, ¶¶ 27-39, 127-128, 163; Exs. 1-4, Type 2/3 Package Agency Contracts (confirming
store locations); Utah Code §§ 32B-1-102(84); 32B-2-601(1); Utah Admin. Code R82-2-301(2).

conclusion would result in all exempt employees everywhere being able to claim overtime pay, simply by putting forward their expenses like mortgages and utility bills and the clothes they wear to work. But certainly that is not contemplated by the FLSA's definition of salary basis; nor are Plaintiffs' expenditures.

Second, as it regards any loss on the price of alcohol sold by Plaintiffs, though they speak in terms of the difference coming out of their salaries, other allegations in their Complaint contradict this claim. Likewise, Plaintiffs contracts make clear that any reductions (if they can be called that) relate solely to the alcohol that Plaintiffs separately *order or consign*. Defendants do not deduct these amounts against Plaintiffs' monthly compensation. As alleged in their Complaint, Plaintiffs can *"'purchase' DABC-owned liquor on consignment*."[32] Defendants also have "unilateral authority to raise or lower the price of their liquor at any time, which they frequently do. In such instances, *any liquor purchased on consignment* must be sold at the new price…."[33] Plaintiffs' contracts further clarify that not only is it Plaintiffs choice whether or not to request a consignment of liquor inventory (i.e., physical bottles of liquor), all named Plaintiffs have, indeed, made such requests and received varying consignments of liquor inventory "determined by a one-month average of the last twelve months of sales."[34] By the plain terms of Plaintiffs' contracts, however, this consignment of liquor inventory has its own value, which is in addition to and separate from Plaintiffs' monthly salary. Indeed, the monthly compensation is set for the duration of the contract and cannot be changed without the express written consent of both the parties, no matter the consignment or any losses associated therewith. This is why these

---

[32] Compl., Doc 2, ¶ 140.
[33] *Id.* ¶ 144.
[34] *See* Ds' Motion, Exs. 1-4.

alleged consignment losses do not constitute an improper deduction. They do not alter the set

amount Plaintiffs receive monthly and therefore cannot be used to reduce their salary basis.

Finally, as it regards the confiscated sales tax, per Plaintiffs' allegations, the sales tax is a

product of Plaintiffs' ***liquor sales***, not their salary. Again, Plaintiffs' Complaint states that

"Defendants employed Plaintiffs to run DABC operated liquor stores and sell DABC-owned and

-controlled liquor on behalf of Defendants."  Plaintiffs further allege that they "are required, as a

matter of law, to collect sales tax amounts ***from each sale made by them***."[35] Thus, by their own

allegation, the sales tax is not withheld from or taken out of their monthly compensation.

Moreover, Plaintiffs concede that any sales taxes confiscated by the Defendants is reimbursed,

albeit with irregular timing, and through a credit towards future purchases of saleable alcohol.[36]

These facts confirm that all the confiscated sales tax transactions occur within the scope of

Plaintiffs' sales and purchases of alcohol. While such handling of the sales taxes may be

inconvenient to the Plaintiffs, it does not render the DABC's actions an improper deduction from

the salary basis under FLSA.

In sum, it is apparent on the face of the Complaint and referenced contracts that Plaintiffs

meet the salary test, along with the other requisite conditions for the administrative exemption,

and in the instance of Plaintiff Maxfield, the highly compensated exemption basis.

## IV.   THE FLSA PREEMPTS PLAINTIFFS' STATE COMMON LAW CLAIMS SINCE ALL DEPEND ON FINDING DEFENDANTS VIOLATED THE FLSA

In determining the FLSA's preemptive effect over Plaintiffs' state law claims, the

question is *not* whether by their state law claims Defendants seek remedies that are more

---

[35] Compl., Doc 2, ¶ 151.
[36] *Id.* ¶ 155.

generous than those provided by the FLSA. Instead, as the cases in the Motion indicate, the

determinative factor for purposes of the FLSA is if Plaintiffs' state law claims at their core rely

on the same facts and depend on establishing that one or more Defendants violated the FLSA.

Here, all Plaintiffs' claims do, a point essentially conceded by Plaintiffs. Their Opposition states:

> … Plaintiffs allege that numerous false representations were made by Defendants regarding their misclassification of Plaintiffs as independent contractors, that Defendants knew or should have known of the misclassification, and that Defendants did not disclose the misclassification to Defendants resulting in damages. (Compl. ¶¶ 219–46.) While the issue of misclassification is pertinent to a claim under the FLSA, *it is also pertinent to a number of other legal claims for damages not available under the FLSA* but available under separate state causes of action (including contract- and fraud- based claims).[37]

Even absent this concession, Plaintiffs factual allegations establish that their state law

common law claims all depend on whether Plaintiffs were misclassified under the FLSA.[38] This

point is best illustrated by evaluating Plaintiffs' assertions in reverse. For example, if it is

ultimately established in this proceeding that Plaintiffs were not misclassified under the FLSA,

either because they are independent contractors or they fall under exemptions to the mandatory

overtime wage requirement, then there can be no misrepresentation, inducement, non-disclosure,

or conspiracy, on the part of Defendants regarding their belief, representations, actions, etc., that

affirmed Plaintiffs' status as independent contractors. Likewise, in the absence of Plaintiffs'

claim of misclassification under the FLSA, then there can be no implied contract or unjust

enrichment entitling Plaintiffs to anything other than what is required by the terms of their

contracts. Again, under the express terms of the ABCA, a person may not operate a package

---

[37] Plaintiffs' Opp., Doc. 12, at p. 28 (emphasis added).

[38] Indeed, Plaintiffs' assertions of misclassification and violation of federal law permeates each and every one of its state common law claims. *See e.g.,* Compl., Doc. 2, ¶¶ 220, 224-25, 230-34, 238, 243, 250, 253, 256-57, 260, 262, 264-65, 267-68.

agency in the absence of a package agency agreement, which "shall state the conditions of operation by which the package agent and the department are bound."[39] Also, the ABCA makes clear that, as package agents, Plaintiffs are not considered DABC employees under Utah law,[40] and are prohibited from being a state employee or otherwise entitled to any benefit of employment from the state of Utah.[41] Thus, Plaintiffs have no state law providing additional rights other than overtime rights guaranteed by the FLSA, nor any separate state law basis upon which to state a plausible claim for relief under any theory of worker misclassification, fraud, civil conspiracy, breach of an implied agreement, or unjust enrichment.

Finally, regarding Defendants' sales tax misrepresentations or the internal investigations that they may or may not have conducted, Plaintiffs' allegations do not identify any legal duty outside their purported employment status that would obligate Defendants to speak or act differently. For example, as it regards the sales tax issue, Plaintiffs' Complaint states that Defendants made false statements and misrepresentations about "*important facts regarding their employment of Plaintiffs*," including but not limited to:

> d. Misrepresenting to Plaintiffs that the Utah State Tax Commission had authorized the collection and use of Plaintiffs' sales tax amounts for purposes other than safekeeping and transferring those amounts to the State of Utah; …
> l. … that the collection and use of Plaintiffs sales tax did not need to be listed in the contract….
> m. … that the Utah State Tax Commission had approved the Defendants' collection and use of Plaintiffs' sales tax amounts other than for remittance to the State of Utah.
> n. [and] …. Man Diep … had investigated the collection and use of Plaintiffs sales tax amounts and had found them to be correct.[42]

---

[39] Utah Code § 32B-2-605(1).
[40] *Id.* § 32B-2-207(4).
[41] *Id.* § 32B-2-601(3)(b).
[42] Compl., Doc. 2, ¶¶ 220, 238.

Likewise, the purported fraud/misrepresentations regarding Defendants' internal investigations also fall within the umbrella of these paragraphs.[43] Moreover, as alleged, the investigative misrepresentations all relate to an investigation (or lack of proper investigation) into Plaintiffs' "worker classification."[44] Thus, these claims like the others are not separate from Plaintiffs' FLSA misclassification claim for overtime wages.

However, even if the sales tax issues were to be treated as a separate claim, it cannot be brought against Defendants. This is because the UGIA also immunizes governmental entities, its officers, and its employees from suit for "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment, if the injury arises out of or in connection with, or results from: … the collection of assessment of taxes."[45]

## V.    THE UGIA HAS NOT BEEN WAIVED

Plaintiffs, again, provide no legal analysis for their contention that the ABCA has waived Defendants' immunity under the UGIA. Nor can they, as the Utah Supreme Court strictly construes statutory wording to preserve that immunity.[46] Here, the UGIA unambiguously states:

> **Except as otherwise provided *in this chapter*,** each governmental entity and each employee of a governmental entity ***are immune*** from suit for any injury that results from the exercise of a governmental function.[47]

In interpreting this provision, the Utah Supreme Court has held that it "indicates an intention that the Act be strictly applied to preserve sovereign immunity, and to waive it *only as clearly expressed therein*."[48]

---

[43] *Id.* at subparagraphs b, e, f, h, j, n, o.

[44] *Id.*

[45] Utah Code § 63G-7-201(4)(h).

[46] *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 14, 24 P.3d 958 (Utah 2001).

[47] *Id.* § 63G-7-201(1).

[48] *Holt v. Utah State Road Commission*, 511 P.2d 1286, 1287-88 (Utah 1973), *overruled on other grounds, Coleman v. Utah State Land Bd.,* 795 P.2d 627 (Utah 1990) (emphasis added); *see also Taylor on Behalf of Taylor v. Ogden City School Dist.*, 927 P.2d 159, 162 (Utah 1996).

In this regard, Defendants opening Motion already addressed how under the UGIA's analysis, Plaintiffs' claims fail. As it regards fraud or willfulness, Defendants' arguments are supplemented below. While Defendants' original Motion also addresses how broadly the UGIA defines a governmental function, it probably bears repeating that the definition does not remove from its scope those activities that a private entity might also be able to perform. Rather, the current version of the UGIA clearly defines "governmental function" as encompassing anything the government "decides to do."[49] Defendants' government immunity has not been waived.

## VI.   PLAINTIFFS ASSERTIONS OF FRAUD AND WILLFULNESS ARE INSUFFICIENT AND IMPLAUSIBLE

Notwithstanding Plaintiffs' fraud and willfulness allegations, all individual Defendants should be dismissed due to Plaintiffs' lack of specificity and the implausibility of their fraud claims. Rule 9(c) of the Utah Rules of Civil Procedure specifies that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Specifically, the elements that a party must allege "to bring a claim sounding in fraud" are

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[50]

Here, Plaintiffs' description of Defendants' "fraudulent misrepresentation/inducement" falls short of doing so with particularity.

---

[49] *Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 58; 356 P.3d 1172.
[50] *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35.

### A. Plaintiffs Fraud/Willfulness Allegations Lack Requisite Specificity

First, Plaintiffs' general allegations of misrepresentation, *see* Compl., Doc. 2, ¶ 220 subparagraphs (a), (b), (c), and (d), are not specific enough in that they do not identify the who, when, or where of the alleged fraud. To the extent these subparagraphs are modified by the other allegations, there is still not sufficient particularity in that Plaintiffs, who admittedly reside throughout the state, lump themselves together without identifying which Defendants spoke to which Plaintiffs at which times. The Utah Supreme Court has explained that a cause of action for fraud against multiple defendants must "supply ... information regarding [each defendant's] personal participation in fraud."[51] Our appellate court has similarly confirmed that it is fatal to refer to the plaintiffs collectively, since that does not "plead a fraud claim as to any specific plaintiff against any specific defendant."[52] Nor are these deficiencies remedied by any of the alleged context. Only subparagraphs (e) & (f) of paragraph 220, describe a situation that identifies a location but even then, Plaintiffs fail to identify which of them attended the meeting. As for the other subparagraphs, though they identify a speaker, some do not provide a date, *see* (i) & (m), and all fail to indicate a location, nor do they identify how the communication occurred or the context in which it was made, and to which Plaintiff the Defendant was speaking.[53] Indeed, subparagraphs (i) and (n) don't even state that a communication was, in fact, made to a Plaintiff. This is why Plaintiffs' allegations are insufficient.

---

[51] *Id.*, 2003 UT 14, ¶ 21, 70 P.3d 35.

[52] *Armer Texas Trust v. BrazellEyeglasses*, 2017 UT App 35, 97 P.3d 604.

[53] Rule 9 requires that a plaintiff not only allege facts to establish the elements of a fraud claim but also recite "[t]he relevant surrounding facts," such as the identity of the person "who made the alleged misrepresentation[ ]" and "the time and location at which it was uttered." *Coroles v. Sabey*, 2003 UT App 339, ¶¶ 22, 28 & n. 15, 79 P.3d 974.

Second, Plaintiffs have not provided any specificity in their Complaint regarding how Defendants "knew" their statements were false. This is also essential to the "willfulness" element that is a prerequisite to suing an employee under the UGIA, since "willful misconduct" means the intentional doing of a wrongful act … without just cause or excuse, where the actor is aware that the actor's conduct will probably result in injury.[54] The ABCA's express dictate is that package agents are independent contractors and cannot be considered to be employees of the DABC or the state. Defendants did not create the regulatory system governing packet agents, but as department employees, they were expected to abide by it. According to Plaintiffs' Complaint, by July 2020, Defendants knew of Plaintiffs' concerns that the level of control exerted had created an employer-employee relationship, but where are the facts indicating that Defendants had specific knowledge – in the face of a state statute stating the contrary, and no other clear authority – that they were, indeed, violating the FLSA. For example, there is no allegation that a competent authority told Defendants that Plaintiffs were misclassified. This is why Plaintiffs' allegations are insufficient.

**B.   Plaintiffs' Fraud Allegations Are Not Plausible**

Even if Plaintiffs' fraud allegations are sufficient to withstand Rule 9(c), they are not plausible. Plaintiffs must put forth allegations that "raise a reasonable expectation that discovery will reveal evidence" supporting the elements of their claim[55] and "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[56] This is what has come to be known as the plausibility standard. It requires that Plaintiffs allege facts that "raise a

---

[54] Utah Code § 63G-7-102(11).
[55] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[56] *Iqbal*, 556 U.S. at 678. *See also Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

right to relief above the speculative level" and show that Defendants' liability is more than "a sheer possibility."[57] Plaintiffs' allegations do not satisfy this standard, and not just because they have failed to allege facts with enough specificity or detail. Rather, in addition to pleading deficiencies, Plaintiffs cannot make out their fraud claim against the individual Defendants because of what they *affirmatively assert*. Specifically, their complaint alleges fraud due to concealment, but reveals that Plaintiffs did not act reasonably and in ignorance of the alleged falsity, nor did they, in fact, rely upon the individual Defendants' misrepresentations.

First, the level of control that Plaintiffs' claim via their allegations to have created an employer-employee relationship has been known to Plaintiffs for years. This is because those controls are manifest in the ABCA and its implementing regulations, which have been in existence for a decade, or more.[58] These controls are also evident in the package agency contracts, which they executed on a yearly basis. Plaintiffs, by their allegations, also indicate that they personally experienced the controls in their dealings with Defendants. During these same years, Plaintiffs have also known—again, through the ABCA and the express disclosure in their contracts—that notwithstanding these controls Defendants deem them to be independent contractors. In other words, Defendants have been completely transparent with Plaintiffs, which makes any claim of concealment relating to Plaintiffs' potential misclassification implausible. Also, Plaintiffs failed to make reasonable inquiries or to act in the face of what they now contend are obvious red flags. There is also the fact that Plaintiffs continued to enter into package agency contracts with the DABC year after year, notwithstanding their knowledge of these purported red

---

[57] *Twombly,* 550 U.S. at 555, 570.

[58] Although some version of the ABCA has been in existence since 1953, the current version of the ABCA was recodified in 2010. Notably, this around the same time that Plaintiffs allege the Defendants made specific plans to assert more control over Plaintiffs and Collective Members.

flags. Under such circumstances, it cannot be inferred that Plaintiffs acted reasonably and in ignorance of Defendants' purported misclassification.[59]

There are similar problems as it regards Plaintiffs purported reliance on the individual Defendants' misrepresentations. Plaintiffs' claim of reliance is that they would not have entered into the package agency contracts but for Defendants' misrepresentations. Plaintiffs have executed these yearly contracts in the month of June, with each new contract operating on a fiscal year cycle from July 1-June 30.[60] Also, Plaintiffs have been entering into these contracts for decades. However, there is no specific allegation of any individual Defendant's misrepresentation *to* Plaintiffs prior to June 2019. Thus, there can be no plausible claim for misrepresentation/inducement against any individual Defendant prior to the FY2020 contracts, as they were executed in June 2019. Also, by the time Plaintiffs entered into their FY2022 contracts, in June 2021, Plaintiffs had already served a Notice of Claim on Defendants pursuant to Utah Code § 63G-7-401. Plaintiffs' first Notice of Claim was served on May 17, 2021.[61] Thus, by that admission, Plaintiffs could not have been relying on any individual Defendants' representations when they entered into their FY2022 contracts. Thus, the only relevant representations to consider are those that occurred June 2019 and May 17, 2021, which means only the FY2020 and FY2021 contracts are at issue.

Looking at each Defendant individually, along with the timing of the purported representations and the statements or actions that are averred it becomes clear that nothing therein is indicative of Defendants' inducement or Plaintiffs' reliance.[62]

---

[59] *See e.g. HKS Architects Inc. v. MSM Enterprises LTD*, 2021 UT App 70, 496 P.3d 228.
[60] *See* Ds' Motion, Doc. 7, Exs. 1-4.
[61] *See* Compl., Doc. 2, ¶ 20.
[62] There is only one paragraph that provide with any level of specificity, albeit still deficiently, what the individual Defendants' fraudulent misrepresentations were, and that is found at Compl., Doc. 2, ¶ 220.

     1.  **Man Diep**. Her only representation was made in March 2017. But since is no allegations that she made that representation directly to any Plaintiff, none could have relied upon it. All claims of fraud against Ms. Diep must be dismissed.

     2.  **Tim Beardall**. His sole representation was that he would "investigate Plaintiffs' worker classification." But that representation occurred in September 2019, so it could not have induced Plaintiffs into entering their FY2020 contracts, as those contracts were executed two months earlier, in June 2019. Nor could his representation have induced Plaintiffs to enter into the FY2021 contract, since he never reported anything further to Plaintiffs, a fact they would certainly have been aware of by the time they executed those contracts, some 10 months later. All fraud claims against Mr. Beardall should be dismissed.

     3.  **RuthAnne Oakey Frost**. She made two representations, but the only one with a date (and thus, the only one that can indicate inducement or reliance to enter into a particular contract) is her statement in June 2019 that "Plaintiffs sales tax did not need to be listed in the contract," and if they required that, they "may need to go separate directions." But hat is not a plausible statement of inducement. All fraud claims against Ms. Frost should be dismissed.

     4.  **Angela Micklos**. She made three representations, two of which were essentially the same, stating that "the new contracts, including the statements that Plaintiffs were independent contractors, were being reviewed by the Attorney General's Office prior to being sent to Plaintiffs." One of these statements came in June 2021, but again, by then Plaintiffs had already filed their May 21, 20121 Notice of Claim, so that cannot support their claim of reliance. As for Ms. Micklos' other statement in June 2020 – that there were no problems with the contracts – when Ms. Mickos told Plaintiffs this, she also said that they "could either take the contract as it was, or they could walk away, much like a cell phone contract." That also is not a plausible statement of inducement. All fraud claims against Ms. Micklos should be dismissed.

**5. <u>Tiffany Clason</u>**. Her only dated representation (thus, the only one that can indicate inducement or reliance to enter into a particular contract) occurs in February 2021. But, since that post-dates Plaintiffs' execution of their FY2021 contract, in June 2020, it is does not support Plaintiffs' claim of reliance for that contract. Nor does Ms. Clason's representation help them as it regards their FY2022 contract, again, because of their filing of the intervening Mary 17, 2021 Notice of Claim. All fraud claims against Ms. Clason must be dismissed.

**6. <u>Salvador Petilos</u>**. He made two representations: one in July 2020, that he would "perform thorough investigation of Plaintiffs' work classification, including determining whether the Plaintiffs were employees or independent contractors," and another, in August 2020, that "Sheila Page from the Attorney General's Office had reviewed the Plaintiffs' classification and had determined that Plaintiffs were correctly classified as independent contractors." But, again, these statements both post-date Plaintiffs' execution of their FY2021 contract, in June 2020, and therefore cannot support Plaintiffs' claim of reliance for that contract. Nor could these representations have induced Plaintiffs to enter into the FY2022 contract, since again, there is the intervening Notice of Claim. Also, Plaintiffs admit that no "person contacted [them] at any time to gather facts in order to perform [this] investigation," a fact they would certainly have been aware in the intervening 10 months. All fraud claims against Mr. Petilos should be dismissed.

**7. <u>Sheila Page</u>**. Ms. Page's representations are only conveyed to Plaintiffs through Mr. Petilos. Thus, all fraud claims against Ms. Page must be dismissed on the same grounds.

**8. <u>Cade Meier</u>**. He is alleged to have made several representations, most of which mirror other Defendants, *see* discussions re Oakey Frost, and Petilos, and therefore where such fraud claims against Mr. Meier are identical, they should be dismissed for the same reasons. There is one statement Mr. Meier alone is alleged to have made, and that on August 2020, that

"Plaintiffs did not need to seek the help of the IRS to determine their worker classification, because Defendant Cade Meier knew that Plaintiffs were correctly classified." But, again, that statement predates Plaintiffs' FY2021 contract, and therefore cannot support Plaintiffs' claim of reliance for that contract. And, there is no other contract for which Plaintiffs can claim reliance, given their intervening Notice of Claim. All fraud claims against Mr. Meier must be dismissed.

9. **Jeff Colvin**. Plaintiffs have not alleged that Mr. Colvin made any specific misrepresentation to them. Indeed, the only specific allegation lodged against Mr. Colvin is that he asserted control over Plaintiffs in such a manner that he created an employer-employee relationship.[63] All fraud claims against Mr. Colvin should therefore be dismissed.

10. **John Barrand.** Plaintiffs have not alleged that Mr. Barrand made any specific misrepresentations to them. Indeed, it is not even clear from the Complaint that Plaintiffs spoke with Barrand. All they allege in terms of their interactions is that they (again without designating exactly who) contacted his "office … in approximately June 2021 to determine how Human Resource Management and the Utah State Retirement and Insurance Act had classified the Plaintiffs" and were told that "Human Resource Management and consequently the Utah State Retirement and Insurance Act, would defer to the DABC."[64] This is not an assertion of fraud, and as such, all fraud claims against Mr. Barrand should be dismissed.

## VII.  PLAINTIFFS' BARRED UGIA CLAIMS ARE NOT EQUITABLE CLAIMS

Generally, equitable jurisdiction is limited to cases in which either the remedy sought is an equitable remedy (injunction, mandamus, specific performance, contract reformation, job

---

[63] Compl., Doc. 2, ¶ 16.
[64] *Id.* 282.

hiring or reinstatement), or because the plaintiff has no other remedy at law and the moral substance of the claim is so compelling that it requires a judicial remedy.[65] However, simply alleging an equitable claim does not ipso facto warrant such relief. While an equitable remedy may also be proper if fraud, duress, unconscionable hardship, or pecuniary results shocking to the conscience are involved,[66] the general rule is that equitable jurisdiction is not justifiable simply because a party's remedy at law failed.[67]

Here, as discussed above, Plaintiffs' Complaint does not support a plausible claim of fraud where the purported control factors that might imply employee status as well as Defendants' position that Plaintiffs were nonetheless independent contractors has always been known to Plaintiffs. Nonetheless, even if Plaintiffs' allegations as to fraud are sufficient, Plaintiffs have a remedy at law: the FLSA. Moreover, back pay and benefits – which is what Plaintiffs seek – is considered a legal remedy comparable to money damages, rather than an equitable remedy,[68] and as such is an action at law subject to the provisions of the UGIA.

## VIII.   THE INFERENCES PLAINTIFF ATTEMPTS TO DRAW FROM THE COMPLAINT'S ALLEGATIONS ARE NOT REASONABLE

Defendants moved to dismiss Plaintiffs' claims for conspiracy and state benefits in the first instance because Plaintiffs fail to state claims supported by well-pled allegations. In the face of these arguments, Plaintiffs improperly attempt to expand their allegations in their Opposition.

---

[65] Dan B. Dobbs, Law of Remedies, (2d ed. 1993); 27A Am.Jur.2d Equity §§ 39–45 (2000).
[66] *Marchant v. Nat'l Reserve Co.*, 103 Utah 530, 137 P.2d 331 (1943); 27A Am.Jur.2d Equity §§ 48, 49 (2003).
[67] 27A Am.Jur.2d Equity § 48 (2003).
[68] An action for backpay, despite some equitable characteristics, can fairly be described as legal. *See Paradise Valley Investigation & Patrol Services, Inc. v. United States District Court*, 521 F.2d 1342, 1343 (9th Cir. 1975); *Wirtz v. Jones*, 340 F.2d 901, 904 (5th Cir. 1965) (private actions for backpay under FLSA "are analogous to actions at law, e.g. debt or assumpsit"). Although monetary relief may not necessarily be legal, *cf. Curtis v. Loether*, 415 U.S. 189, 196 (1974), an action for the recovery of a money judgment is at least presumptively one at law. *See Whitehead v. Shattuck*, 138 U.S. 146, 151 (1891).

While a memorandum may be an opportunity to explain theories of the case more thoroughly, it is not the mechanism by which amendments are made.[69]

For example, when it comes to their state benefits claim, Plaintiffs recite a bunch of new facts in an effort to bolster their deficient allegations of futility. But none of these facts are actually plead in their Complaint. Moreover, their new allegations do not comport with the administrative exhaustion process, so they are likewise implausible. Plaintiffs state that without a proper classification as employees, they have no ability to initiate an account for benefits under the State Retirement and Insurance Act, let alone appeal discrepancies. But it is not a traditional appeal that initiates the exhaustion process. The statute provides in relevant part:

> (1)(c)(1) A person who disputes a benefit, right, obligation, or employment right under this title ***shall request a ruling by the executive director*** who may delegate the decision to the deputy director.
>
> (c)(2) ***A request for a ruling to the executive director*** under this section ***shall constitute the initiation of an action*** for purposes of the limitations periods….
>
> (d) A person who is dissatisfied by a ruling under Subsection (1)(c) with respect to any benefit, right, obligation, or employment right under this title may request a review of that claim by a hearing officer within the [prescribed] time period….
> (2) The hearing officer shall:
> …
>   (c) hear and determine all facts relevant to a decision…; and
>   (d) make conclusions of law in determining the person's rights under any system, plan, or program under this title ...
> (3) The board shall review and approve or deny all decisions of the hearing officer…
> (6) A party aggrieved by the board's final decision … may obtain judicial review by complying with the [specified] procedures and requirements...[70]

As the statute makes clear, exhaustion is initiated by a request for decision and also involves many levels of appeal opportunity *beyond* any deference to Defendants or the decision of

---

[69] *See* Fed. R. Civ. P. 15.
[70] Utah Code § 49-11-613.

Barrand or the Board. Plaintiffs' allegations, as clarified by their Opposition, show that they did not initiate even the first step of this mandatory exhaustion process.

Similarly, in an attempt to cure their failure to adequately plead civil conspiracy as to each Defendant, Plaintiffs rely on what they characterize as "reasonable inferences" but the facts do not stretch as far as Plaintiffs would have them. Plaintiffs argue that their Complaint shows that there is a "detailed web of interactions" between all Defendants. But this is belied by a closer look at Plaintiffs' specific allegations (as opposed to their unsupported conclusions) which are devoid of any factual evidence supporting an agreement between all persons relating to all the civil conspiracy claims—i.e., misclassification, fraud, misrepresentation, and concealment. Just as an example, the allegations regarding several of the individual Defendants—such as, Colvin, Diep, Barrand, and Beardall—are incredibly sparse. Moreover, it is completely unreasonable to infer that Barrand has engaged in any conspiracy with any Defendant where, as here, Plaintiffs' Opposition makes clear that they did not speak to him directly. Plaintiffs' civil conspiracy and state benefits claims fail and must be dismissed.

## IX.   PLAINTIFFS' BREACH OF IMPLIED CONTRACT CLAIM IS IMPLAUSIBLE

As noted above, Plaintiffs are relying upon a "legal conclusion" disguised as fact, which is that they have been misclassified as independent contractors, to resurrect their ill-plead breach of implied contract claim. But this Court is not required to accept a complainant's legal conclusions at true.[71] Further, this Court has no authority under the guise of the FLSA to ignore the parties' contracts or render them null and void. Plaintiffs' remedy under the FLSA is overtime pay, not the negation of their contracts.

---

[71] *Iqbal*, 556 U.S. at 679-80.

Nonetheless, should this Court accept Plaintiffs' legal claim of unconscionability and treat it as fact, it does not alter the outcome. This is because it is still implausible that the parties had a meeting of the minds as it regards Plaintiffs' status as a DABC employee. Even if the contracts were deemed unenforceable, Defendants' intent is manifest therein, and it expressly rejects that Defendants ever agreed to treat Plaintiffs as DABC employees. In sum, Plaintiffs' breach of implied contract claim is implausible and should be dismissed.

## CONCLUSION

For all the foregoing reasons, and incorporating the arguments presented in Defendants' opening Memo, Defendants hereby respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety.

DATED: March 7, 2022.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ *Jaqualin Friend Peterson*
JAQUALIN FRIEND PETERSON
ADAM S. KUNZ
Assistant Utah Attorneys General
*Attorneys for Defendant*

28