THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LEEANNE MAXFIELD, et al.,<br><br>Plaintiff,<br><br>v.<br><br>UTAH DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, et al.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO CONDITIONALLY CERTIFY CLASS**<br><br>Case No. 4:21-cv-00099-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiffs LeeAnne Maxfield, Jay Clayton, Cheree Kahrs, Jodi Rowley, Victoria Bower, Heather Dawn Hart, Alison Cicala, Calvin Ockey, and Lisa Ockey brought suit[1] under the Fair Labor Standards Act ("FLSA").[2] Plaintiffs allege they were employees of Defendants and that Defendants "willfully misclassified" them and other similarly situated individuals as independent contractors and failed to pay them overtime in accordance with the FLSA.[3] Plaintiffs filed their Motion to Conditionally Certify the Collective ("Motion")[4] seeking to represent "[a]ll individuals operating or managing a liquor store in the State of Utah through a Type 3 Package Agency but who were not paid as a W-2 employee from July 31, 2020 to the present . . . ."[5] For the reasons explained below, the Motion is GRANTED.

---

[1] Complaint, docket no. 2, filed September 15, 2021.

[2] 29 U.S.C. §§ 201–219.

[3] Docket no. 2 at 4, filed September 15, 2021.

[4] Docket no. 51, filed August 15, 2023. After the Motion was filed, Plaintiffs Barbara Adams, Michael Wyrick, Sammi Wilcox, and Boyd Brothersen stipulated to a dismissal of their claims. Docket no. 61, filed August 1, 2024, and docket no. 63, filed October 21, 2024.

[5] Motion at 2.

## BACKGROUND[6]

The State of Utah regulates and controls the production, distribution, sale, and consumption of alcohol products in the state through the Alcohol Beverage Control Act ("ABCA").[7] Under the ABCA, the Department of Alcoholic Beverage Services ("DABC")[8] controls alcoholic products as a public business.[9] Among other things, the DABC controls liquor merchandise inventory and operates state-owned liquor stores.[10] The ABCA also authorizes the DABC to enter into "package agency" agreements with persons to sell alcoholic products "from premises other than those owned or leased by the state."[11] A person authorized to operate a package agency is a "package agent."[12] Under the ABCA, a package agent "may not be a state employee" or "construed to be a state employee or otherwise entitled to any benefit of employment from the state."[13]

Plaintiffs are all current or former package agents.[14] Plaintiffs allege that Defendants' conduct towards Plaintiffs created an employee-employer relationship with Plaintiffs under the

[6] This background is taken primarily from the allegations of the Complaint and materials attached to briefing on the Motion and is only pertinent for purposes of evaluating conditional class certification at this stage; the background section should not be viewed as addressing the merits of the case, or as evidence of the veracity of any allegations.

[7] Utah Code Ann. §§ 32B-1-101, -104.

[8] Defendants note in Defendants' Memorandum in Opposition of Plaintiff's Motion to Conditionally Certify the Collective ("Opposition"), docket no. 53 at 2 n.1, filed August 29, 2023, that the Department of Alcoholic Beverage Control underwent a name change and is now called the Department of Alcoholic Beverage Services ("DABS"). *See also* Utah Code Ann. § 32B-2-203. For purposes of this Motion, the acronym DABC is used for convenience and consistency with the Motion, but this reference is used to mean both the Department of Alcoholic Beverage Services and Department of Alcoholic Beverage Control as used by the parties in the briefing on the Motion.

[9] Utah Code Ann. §§ 32B-1-103, -2-203.

[10] Utah Code Ann. §§ 32B-2-204, -501.

[11] Utah Code Ann. § 32B-2-601.

[12] *Id.*

[13] *Id.*

[14] Complaint at 3, ¶¶ 1-4.

FLSA's definition of employment.[15] Plaintiffs filed suit in September 2021. Plaintiffs allege that "Defendants employed Plaintiffs to run DABC-operated liquor stores and sell DABC-owned and -controlled liquor on behalf of Defendants."[16] Plaintiffs allege that they "were employed by Defendants but were misclassified as independent contractors" and that Defendants failed or refused "to pay them overtime for time they worked in excess of forty (40) hours per week, in violation of [the FLSA]."[17] Plaintiffs' Complaint brought claims for a failure to pay overtime under the FLSA, fraudulent misrepresentation and inducement, fraudulent or negligent non-disclosure, negligent misrepresentation, breach of implied employment contract, unjust enrichment, civil conspiracy, and a failure to pay benefits.[18]

Prior to filing answers responding to the Complaint, Defendants successfully moved[19] to dismiss all of Plaintiffs' claims except the FLSA claim for overtime.[20] Plaintiffs subsequently filed the present Motion which seeks conditional certification of their class under the FLSA. Defendants filed their Opposition[21] and Plaintiffs filed a Reply.[22]

---

[15] Complaint at 3-4, 12-23, ¶¶ 1-9, 74-133.

[16] *Id.* at 9, ¶ 54.

[17] *Id.* at 4, 9, ¶¶ 7, 54.

[18] *Id.* at 34-50, ¶¶ 206-283.

[19] Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint, Docket no. 7, filed January 10, 2022.

[20] Memorandum Decision Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, docket no. 28, filed March 28, 2023.

[21] Docket no. 53, filed August 29, 2023.

[22] Reply Memorandum to Defendants' Memorandum in Opposition of Plaintiffs' Motion to Conditionally Certify the Collective, docket no. 54, filed September 12, 2023. Defendants also filed a Notice of Errata (Reply Memorandum to Defendants' Memorandum in Opposition of Plaintiffs' Motion to Conditionally Certify the Collective) ("Errata"), docket no. 55, filed September 12, 2023. The Errata points out two mistaken references in the Reply and includes a corrected Motion.

## LEGAL STANDARD

The FLSA permits "[a]n action to recover [unpaid minimum wages, or their unpaid overtime compensation]. . . against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[23] "Though 'similarly situated' is not defined by the FLSA, district courts must determine who is similarly situated in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."[24]

The Tenth Circuit has noted there are "three different approaches district courts use to determine who is similarly situated: the *ad hoc* approach, the Rule 23 approach, and the spurious approach."[25] The *ad hoc* approach is an appropriate method to determine whether individuals are similarly situated.[26] "Under the two-step certification or '*ad hoc*' approach," the first step is for a court to make "an initial notice stage determination of whether plaintiffs are similarly situated."[27]

This first threshold for certification requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[28]

---

[23] 29 U.S.C. § 216(b).

[24] *In re Chipotle Mexican Grill, Inc.*, No. 17-1028, 2017 WL 4054144, at *1 (10th Cir. Mar. 27, 2017) (internal citations and quotation marks omitted).

[25] *Id.*

[26] *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (Noting that the ADEA borrowed the similarly situated standard from the FLSA and explaining that "[a]rguably, the ad hoc approach is the best of the three approaches outlined because it is not tied to the Rule 23 standards. Congress clearly chose not to have the Rule 23 standards apply to class actions under the ADEA, and instead adopted the 'similarly situated' standard. To now interpret this 'similarly situated' standard by simply incorporating the requirements of Rule 23 (either the current version or the pre 1966 version) would effectively ignore Congress' directive.").

[27] *In re Chipotle Mexican Grill, Inc.*, 2017 WL 4054144, at *1.

[28] *Id.* (internal quotation marks and citation omitted).

This initial standard is lenient and "typically results in class certification."[29] The burden on plaintiffs at the first step requires a "modest factual showing [that] cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist."[30]

Even if conditional class certification is granted under the first step of the ad hoc approach, potential class members still must opt-in to the class. "Unlike class actions under Rule 23," the FLSA requires class members to opt-in to the class and directs that "[n]o employee shall be a party plaintiff to any such [FLSA class] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[31] "Under the FLSA . . . 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . ."[32]

Conditionally granting class certification is not tied to the strength of the Plaintiffs' case on the merits. Consistent with the Tenth Circuit's direction in the parallel Rule 23 context for class certification, courts should "avoid focusing on the merits underlying the class claim" when "making the class certification determination . . . ."[33]

Under the two-step ad hoc approach, after discovery has been completed, a "stricter similarly-situated determination" can be sought and considerations at that step will include "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses

---

[29] *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2020 WL 3605652, at *2 (D. Utah July 2, 2020) (internal quotation marks and citation omitted).

[30] *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

[31] *Thiessen*, 267 F.3d at 1102.

[32] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

[33] *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the FLSA before instituting suit."[34]

Plaintiffs' Motion seeks class certification under the ad hoc approach's lenient first-step standard so that Plaintiffs may provide notice to potential class members. Based on the record presented with the Motion and the lenient standard required to conditionally certify a class at the notice stage under the FLSA, the Motion is GRANTED.

**ANALYSIS**

Plaintiffs argue that each plaintiff and proposed members of the class "were each victims of the same decision, policy, or plan" because the "State of Utah, through the DABC, made the improper decision to classify all persons working as package agents as independent contractors rather than employees regardless of the nature of the work performed."[35] In support of Plaintiffs argument that they are employees of Defendants, Plaintiffs allege that the DABC "controls every aspect of the work performed" by Plaintiffs and the potential class members.[36]

To support the allegations in the Complaint and the Motion, Plaintiffs include the declarations of LeeAnne Maxfield,[37] Heather Dawn Hart,[38] Victoria Bower,[39] and Alison

[34] *Id.* (cleaned up).

[35] Motion at 6.

[36] *Id.* (citing Complaint at 15-22, ¶¶ 91-130).

[37] Declaration of LeeAnne Maxfield in Support of Conditional Certification ("Maxfield Declaration"), docket no. 51-2, filed August 15, 2023.

[38] Declaration of Heather Dawn Hart in Support of Conditional Certification ("Hart Declaration"), docket no. 51-3, filed August 15, 2023.

[39] Declaration of Victoria Bower in Support of Conditional Certification ("Bower Declaration"), docket no. 51-4, filed August 15, 2023.

Cicala[40] (together, the "Motion Declarations"). Plaintiffs' Motion Declarations assert that each declarant is a current or former employee of the DABC that operates or manages a Type 3 Package Agency ("Type 3 Package Agent").[41] The Motion Declarations describe familiarity with the management and operational responsibilities of other Type 3 Package Agents that are not parties to this suit and assert that their own responsibilities and those of non-party Type 3 Package Agents "are substantially similar regardless of location, corporate structure . . . , and yearly compensation."[42] Plaintiffs describe having personal knowledge of potential class member Type 3 Package Agents based on personal observations and conversations with these individuals.[43]

Plaintiffs describe having the "the same management and operation responsibilities," being "taught the same policies and procedures," and attending "the same meetings and trainings . . . ."[44] Plaintiffs explain that the same contracts are used for all Type 3 Package Agents,[45] that all Type 3 Package Agents are required to follow a detailed employee handbook,[46] adhere to "DABC's own internal policies and procedures,"[47] "prepare and submit various daily, weekly, monthly, and quarterly reports,"[48] and use DABC software, forms, and

---

[40] Declaration of Alison Cicala in Support of Conditional Certification ("Cicala Declaration"), docket no. 51-5, filed August 15, 2023.

[41] Maxfield Declaration ¶ 2; *see also* Hart Declaration ¶ 2; *see generally* Motion Declarations. All of Motion Declarations are virtually identical and all provide support for Plaintiffs' allegations described in this section of analysis. For convenience, only the Maxfield Declaration is cited for each of Plaintiff's allegations, but nearly identical support is found in each of the Motion Declarations.

[42] Maxfield Declaration ¶ 4; *see generally* Motion Declarations and *supra* note 41.

[43] Maxfield Declaration ¶ 18-19, *see generally* Motion Declarations and *supra* note 41.

[44] Maxfield Declaration ¶ 4, *see generally* Motion Declarations and *supra* note 41.

[45] Maxfield Declaration ¶ 5, *see generally* Motion Declarations and *supra* note 41.

[46] Maxfield Declaration ¶ 6-8, *see generally* Motion Declarations and *supra* note 41.

[47] Maxfield Declaration ¶ 8-9, *see generally* Motion Declarations and *supra* note 41.

[48] Maxfield Declaration ¶ 11, *see generally* Motion Declarations and *supra* note 41.

methods.[49] Plaintiffs detail that DABC input and approval was needed for the Type 3 Package Agents to hire employees as managers or designees.[50]

Plaintiffs further allege ways DABC exercises controls over the Type 3 Package Agents including mandating purchase and sale price of inventory, required shelf and price tags, mandatory hours of operation and closure, advertising restrictions, mandatory equipment and point-of-sale systems, required damage reports, mandatory service of DABC licensee bars and restaurants, and obligated reports on DABC licensees.[51] Plaintiffs allege fixed pay regardless of the hours worked[52] and Plaintiffs remaining claim alleges that Defendants "did not pay Plaintiffs or Collective members one- and one-half times their regular rates of pay for time spent working in excess of forty (40) hours in a given workweek."[53] Plaintiffs assert that other Type 3 Package Agents "were subject to the same rigid oversight by the DABC"[54] and believe that other Type 3 Package Agents would be interested in this suit.[55]

Defendants' arguments in the Opposition do not demonstrate that conditional certification is improper. Defendants argue that conditional certification is inappropriate because the Plaintiffs' package agencies have different corporate structures, and the Plaintiffs have different ownership interests based on the different structures.[56] But Defendants do not actually explain how the different structures or interests make the various package agents differently situated and

---

[49] Maxfield Declaration ¶ 11, *see generally* Motion Declarations and *supra* note 41.

[50] Maxfield Declaration ¶ 13, *see generally* Motion Declarations and *supra* note 41.

[51] Maxfield Declaration ¶ 14, *see generally* Motion Declarations and *supra* note 41.

[52] Maxfield Declaration ¶ 17, *see generally* Motion Declarations and *supra* note 41.

[53] Complaint at 35, ¶ 213.

[54] Maxfield Declaration ¶ 18, *see generally* Motion Declarations and *supra* note 41.

[55] Maxfield Declaration ¶ 19, *see generally* Motion Declarations and *supra* note 41.

[56] Opposition at 7-8

offer conclusory speculation that the differences in structure must create a difference.[57] But the contractual structure of the package agencies does not undercut Plaintiffs' allegations that Defendants' actions created an employer-employee relationship regardless of the contractual structures, or undercut Plaintiffs allegations that Defendants did not pay overtime. And the Motion Declarations specifically assert that Plaintiffs' and other Type 3 Package Agents' "employment are **substantially similar regardless of** location, [or] **corporate structure** of package agency . . . ."[58] The Motion Declarations lists multiple similarities that are consistent across package agencies regardless of the corporate structure.[59] At stage two analysis of the class and after discovery concludes, Defendants may be able to show the corporate structures undercut Plaintiffs' assertions that the Plaintiffs and potential class members are similarly situated, but Defendants argument fails at this time. Similarly, Defendants' argument about distinctions between operating and managing a package agency is insufficiently developed or clear and does not prevent conditional class certification.[60]

Defendants also argue that application of different exemptions to the FLSA will require individual determinations that make conditional class certification inappropriate.[61] As has been described by another district court in this circuit, "Defendant[s] ultimately may be correct that the exemption[s] should apply in this instance. But the time to consider whether this exception applies is not during the conditional certification process."[62] Defendants' arguments about the

---

[57] *Id.*

[58] Maxfield Declaration at 2, ¶¶ 2-5 (emphasis added), *see generally* Motion Declarations and *supra* note 41.

[59] Maxfield Declaration at 2, ¶¶ 2-5 (emphasis added), *see generally* Motion Declarations and *supra* note 41.

[60] Opposition at 8.

[61] *Id.* at 8-10.

[62] *Worsley v. Staples Grp., Inc.*, No. 17-2254-CM, 2018 WL 4620813, at *2 (D. Kan. Sept. 26, 2018) (citation omitted).

various potential defenses is more appropriately determined after discovery has closed at the stricter step two of the ad hoc approach.

Plaintiffs' allegations and the supporting Motion Declarations are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[63] These allegations are sufficient to conditionally certify the class as sought in the Motion and to provide notice to potential class members. Importantly, this determination does not address the merits of Plaintiffs' allegations, or represent a final determination of whether a class action is appropriate in this case—challenges to the class may still be made at the more rigorous step two of the ad hoc approach after discovery has concluded.

**ORDER**

IT IS HEREBY ORDERED that the Motion[64] is GRANTED as follows:[65]

1. The claim asserted by Plaintiffs for alleged violations of the FLSA is conditionally certified as a collective action under the FLSA for the purpose of sending notice to "all individuals operating or managing a liquor store in the State of Utah through a Type 3 Package Agency but who were not paid as a W-2 employee from July 31, 2020 to the present . . . ."[66]

2. Defendants will have the right to move to decertify the collective action or oppose a request by Plaintiffs for final certification of the collective action after discovery has closed.

---

[63] *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2020 WL 3605652, at *4 (D. Utah July 2, 2020) (citation omitted).

[64] Docket no. 51, filed August 15, 2023.

[65]

[66] *Id.* at 2.

3. Plaintiffs shall update their proposed notice of collective action attached to the Motion[67] within 14 days of the entry of this order and by that same deadline file a motion for its approval. The updated notice should reflect the plaintiffs currently party to the suit and update representation details and contact information as needed. The updated notice shall provide potential class members 60 days to opt-in to the class. Defendants may file any objection to the notice within 7 days of the filing of the motion for approval of the proposed notice. Plaintiffs may file a response to any objection raised by Plaintiffs within 7 days of the filing of the objection.

4. Defendants shall produce to Plaintiffs' counsel a computer-readable list of names and last known physical addresses and email addresses of "all individuals operating or managing a liquor store in the State of Utah through a Type 3 Package Agency but who were not paid as a W-2 employee from July 31, 2020 to the present" within 28 days of the entry of this order.

5. Plaintiffs are authorized to mail or email the notice after an order is entered granting the motion approving the proposed notice. All costs of mailing the notice will be borne by Plaintiffs. In addition, Plaintiffs may text the notice, but a text message is optional and shall not constitute the required notice.

6. Plaintiffs shall mail or email the notice to potential class members within 14 days of the receipt of addresses from Defendants, or the entry of an order accepting the proposed notice, whichever is later. The notice shall specify the 60-day deadline to opt-in to the class. This 60-day period shall begin to run on the 14th day following the receipt of addresses from Defendants, or the entry of an order accepting the proposed notice, whichever is later. Plaintiffs shall promptly file a copy of the notice in this case.

---

[67] Exhibit 1, docket no. 51-1, filed August 15, 2023.

7. All consent to sue forms for any individual who elects to join this lawsuit must be filed within the 60-day opt-in window as described in this Order. No one will be allowed to opt into or otherwise join this lawsuit after the expiration of this period.

Signed May 8, 2025.

BY THE COURT

David Nuffer
United States District Judge