**IN THE UNITED STATES DISTRICT COURT IN AND FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION**

| | |
|---|---|
| JAY CLAYTON, an individual, and on behalf of all others similarly situated; CHEREE KAHRS, an individual, and on behalf of all others similarly situated; JODI ROWLEY, an individual, and on behalf of all others similarly situated; VICTORIA BOWER, an individual, and on behalf of all others similarly situated; HEATHER DAWN HART, an individual, and on behalf of all others similarly situated; ALISON CICALA, an individual, and on behalf of all others similarly situated; CALVIN OCKEY, an individual, and on behalf of all others similarly situated; and LISA OCKEY, an individual, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UTAH DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, et al.,<br><br>Defendants. | **MEMORANDUM DECISIONS AND ORDER GRANTING STIPULATED MOTION FOR APPROVAL OF SETTLEMENT AND FOR DISMISSAL WITH PREJUDICE**<br><br>Case No.: 4:21-cv-00099-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

Having reviewed the parties' Stipulated Motion for Approval of Settlement Agreement and for Dismissal with Prejudice (Dkt.100), the Settlement Agreement and Release attached thereto as Exhibit A, the record in this matter, and the applicable law, the Court finds as follows:

## I. Background and Procedural History

1. On September 19, 2021, Plaintiffs filed this collective action, originally styled *LeeAnn Maxfield, et al. v. Utah Department of Alcoholic Beverage Control, et al.*, Case No.

4:21-cv-DN-PK, in the United States District Court for the District of Utah. Plaintiffs alleged that Defendants misclassified Plaintiffs as independent contractors and failed to pay them overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").

2. At the time this Action was commenced, each Plaintiff held a contract with the Utah Department of Alcoholic Beverage Control—subsequently renamed the Utah Department of Alcoholic Beverage Services ("DABS")—to operate a "Type 3 Package Agency," a retail liquor location operated under an agreement with DABS to sell packaged liquor for off-premises consumption. Individual Defendants Cade Meier, Tiffany Clason, Jeff L. Colvin, Salvador Petilos, Angela Micklos, Ruthanne Oakey Frost, Tim Beardall, and Man Diep were at all relevant times employees of DABS; John Barrand is and has been an employee of the Division of Human Resources Management, a division of the Utah Department of Government Operations, a separate agency from DABS.

3. In addition to the FLSA claim, Plaintiffs initially asserted numerous other claims. On March 30, 2023, all claims except the FLSA overtime claim were dismissed. Doc. 28. Defendants filed their respective answers on May 26, 2023. Docs. 37–46.

4. Several named Plaintiffs subsequently withdrew from the Action by stipulation and/or Court approval. The dismissed Plaintiffs include Michael Wyrick, Barbara Adams, Sammi Wilcox, Boyd Brotherson, and Lead Plaintiff LeeAnn Maxfield. [Dkt. No.s 61, 63 & 99].

5. On May 5, 2025, the Court granted Plaintiffs' Motion to Conditionally Certify the Class. Doc. 73. An approved Notice of the Collective Action was thereafter served on

the potential class consisting of all Type 3 Package Agents. The 90-day opt-in period has since expired. Five individuals filed Consents to Join Collective Action (Docs. 81–84), each expressly agreeing to be bound by "any judgment by the Court or any settlement of this action." Of those five, only Traci G. Pratt actively participated in the Action by responding to written discovery and making herself available for deposition; the others did not respond to discovery and ultimately indicated their withdrawal.

6. Following extensive discovery—including the exchange of thousands of documents and multiple depositions—the parties commenced settlement discussions. On April 8, 2026, the parties informed the Court of their settlement negotiations and sought a stay of discovery, which was granted. [Dkt. Nos. 96 & 97]. After the dismissal of the lead Plaintiff and after Class Counsel agreed to reduce their attorneys' fees to $35,000, the parties entered into the Settlement Agreement.

7. The parties filed the Stipulated Motion and the Settlement Agreement on July 27, 2026.

## II. The Settlement Class/Individuals Bound by the Settlement Agreement

8. As defined in the Settlement Agreement and confirmed by the Stipulated Motion, the signatories/"Settlement Class" consists of the following nine individuals: **Jay Clayton, Cheree Kahrs, Jodi Rowley, Victoria Bower, Heather Dawn Hart, Alison Cicala, Calvin Ockey, Lisa Ockey, and Traci G. Pratt**. This Settlement Class comprises the remaining named Plaintiffs and the one individual who joined and actively participated in the collective action. Each Settlement Class member has

been notified of and has agreed to the settlement terms, as evidenced by their execution of the Settlement Agreement. Additionally, such signatories/"Settlement Class" constitute the only individuals bound by the Settlement Agreement.

### III. Legal Framework for Approval of FLSA Collective Action Settlements

9. Federal court approval is required to settle FLSA claims. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982). A district court may enter a stipulated judgment under the FLSA "after scrutinizing the settlement for fairness." *Id.* at 1353, 1355. The Court may approve a settlement if it reflects "a reasonable compromise over issues that are actually in dispute." *Id.* at 1354. Unlike Rule 23 class actions, Section 216(b) collective actions do not require a fairness hearing, and Rule 23's procedural requirements do not apply to FLSA collective actions.

10. Because all Settlement Class members have affirmatively consented to participate in this action—and the rights of non-opt-in individuals are not at issue—the due process concerns that animate Rule 23's procedural requirements are not implicated here.

11. Public policy strongly favors the settlement of collective and class action litigation. *See, e.g.*, *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

## IV. Part II.A: The Settlement Agreement Represents a Resolution of a Bona Fide Dispute and Is Fair and Reasonable

### A. Bona Fide Dispute

12. To satisfy the bona fide dispute element, the parties must present information regarding the nature of the dispute sufficient to show there is more than the mere existence of an adversarial lawsuit. This element is satisfied when there are genuine disputes regarding whether an employee is entitled to overtime and the amount of overtime owed, or when unresolved or uncertain legal and factual issues are present.

13. The Court finds that a bona fide dispute exists. Both sides conducted extensive factual and legal investigation. The parties engaged in wide-ranging discovery, exchanging interrogatories, requests for admission, and thousands of documents, and held multiple depositions prior to settlement negotiations. This case presents questions of first impression: to establish liability, Plaintiffs who contractually operated or managed a Type 3 Package Agency must overcome Defendants' assertion that they were properly classified as independent contractors given the broad authority States possess to regulate the distribution of intoxicating liquors within their borders. Even if Plaintiffs could establish misclassification, significant disputes remain as to whether their eligibility for overtime compensation is foreclosed by equity interests in their Package Agency or by the nature of their primary duties, which Defendants contend fall within either the FLSA "business entity" or "administrative" exemptions. These disputed legal and factual questions present material risk to both sides.

**B. Fairness and Reasonableness of the Settlement Amount**

14. The settlement must "provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *McMillian v. BP Service, LLC*, No. DDC-TJJ, 2020 WL 969870, at *2 (D. Kan. Feb. 28, 2020).

15. The Court finds that the proposed settlement is fair and reasonable. Defendant DABS agrees to pay a Gross Settlement Amount ("GSA") of $275,000. After deduction of court-approved attorneys' fees of $35,000, the remaining $240,000 will be disbursed to the Settlement Class pursuant to the Settlement Class members' agreement. The proportion of the GSA to be distributed to the Settlement Class represents substantially most, if not all, of the overtime pay that Plaintiffs asserted they were owed, taking into account the differences in their respective contractual compensation and claimed hours of overtime from 2018 to the present. Defendants, for their part, maintain that no overtime would be required at all, as Plaintiffs were either independent contractors or fell within applicable FLSA exemptions. The settlement thus reflects a fair and reasonable compromise of genuinely contested claims.

16. Class Counsel and Defense Counsel reached this settlement through an arm's-length negotiation process, and counsel on both sides possess considerable experience and practical judgment. The Court accords substantial weight to the parties' mutual conclusion that the settlement is fair. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006).

17. Each Settlement Class member has signed the Settlement Agreement, confirming notice of and assent to the settlement terms.

18. Based on the foregoing, the Court finds that the Settlement Agreement resolves a bona fide dispute and is fair and reasonable within the meaning of *Lynn's Food Stores*, 679 F.2d at 1354–55.

## V. Part II.B: Attorneys' Fees and Expenses

### A. Legal Standard

19. In collective and class actions where a common fund is created, courts in the Tenth Circuit apply the "percentage of the fund" method or the lodestar method to evaluate attorneys' fees, expressing a preference for the percentage-of-the-fund approach. *Gottlieb v. Barry*, 43 F.3d 474. In either case, the court must consider the twelve factors first articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Brown v. Phillips Petroleum Co*., 838 F.2d 451. Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455.

20. The Tenth Circuit has approved both the percentage-of-the-fund and lodestar methods in common-fund cases, while expressing a preference for the percentage-of-

the-fund approach. *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259. The percentage chosen must be reasonable, and the district court must articulate specific reasons for the award. *Brown v. Phillips Petroleum Co.,* 838 F.2d 451. A court need not conduct a factor-by-factor recitation of every Johnson element, provided that the record reflects meaningful consideration of the relevant underlying factors and supports the reasonableness of the award. *Law v. NCAA*, 4 Fed. Appx. 749.

21. Class Counsel seeks attorneys' fees of $35,000, representing 12.73% of the $275,000 GSA.

**B. Application of the Johnson Factors**

22. **Factor 1 – Time and Labor Required.** Class Counsel expended substantial time and labor prosecuting this Action from inception through settlement. Counsel conducted pre-suit investigation and analysis of potential FLSA violations; prepared and filed the Complaint and the motion for conditional class certification; responded to Defendants' motion to dismiss; engaged in extensive discovery including preparation and exchange of initial disclosures, interrogatories, requests for admission, requests for document production, and taking and attending multiple depositions; exchanged multiple settlement offers and counteroffers; negotiated and finalized the Settlement Agreement; and prepared the Stipulated Motion and supporting materials for court approval. This factor weighs in favor of the requested fee.

23. **Factor 2 – Novelty and Difficulty of the Questions Presented.** This case presents questions of first impression. Specifically, the threshold issue of whether Type 3 Package Agency operators—who hold contractual relationships with a state agency

possessing broad constitutional authority to regulate the distribution of intoxicating liquors—can be classified as employees under the FLSA is a novel and legally complex question. Additional difficult questions involve whether FLSA overtime exemptions (the "business entity" and "administrative" exemptions) apply to Package Agency operators. This factor supports the requested fee.

24. **Factor 3 – Skill Requisite to Perform the Legal Service Properly.** FLSA collective actions involve a specialized area of the law that is often complex and difficult, requiring a degree of extra skill to litigate properly. Counsel must navigate not only the substantive FLSA standards, but also the procedural requirements unique to collective actions under Section 216(b). This factor favors the requested award.

25. **Factor 4 – Preclusion of Other Employment.** While the record does not specify the precise degree to which Class Counsel was precluded from accepting other employment, the years of litigation required in this matter—including extensive discovery, briefing, and settlement negotiations—necessarily consumed significant attorney time and resources that could not simultaneously be devoted to other matters. This factor is neutral to mildly supportive.

26. **Factor 5 – Customary Fee.** The requested fee of $35,000 represents 12.73% of the common fund. This percentage is well within the range of reasonable percentage fee awards approved by courts in this Circuit. Courts within the Tenth Circuit have approved fee awards constituting 30–40% of a common fund as reasonable, and have recognized that the customary fee in a common fund settlement is approximately one-third of the total economic benefit conferred on the class. A fee award of 12.73% is substantially below this customary range, reflecting Class Counsel's voluntary

reduction of their fees to facilitate the settlement for the benefit of the Settlement Class. *Gottlieb v. Barry,* 43 F.3d 474. This factor strongly favors approval.

27. **Factor 6 – Whether the Fee Is Fixed or Contingent.** Class Counsel undertook representation of the Settlement Class on a contingent basis, bearing the risk of nonpayment throughout years of litigation. Courts routinely approve fee awards in FLSA collective actions where counsel assumed the risk of nonpayment and achieved a favorable result. The contingent nature of the fee warrants recognition and supports the requested award.

28. **Factor 7 – Time Limitations Imposed by the Client or Circumstances.** This Action was initiated in September 2021 and involved years of litigation before settlement was achieved. While the record does not reflect any unusual exigency or time limitation imposed by the client, the pace of litigation was shaped by the complexity of the claims, the scope of discovery, and the challenges associated with coordinating a multi-plaintiff collective action. This factor is neutral.

29. **Factor 8 – Amount Involved and Results Obtained.** Class Counsel achieved a settlement of $275,000, with $240,000 to be distributed to the nine Settlement Class members—representing substantially most, if not all, of the overtime pay that the Settlement Class members asserted they were owed. This result was obtained despite significant legal risk and the presence of a novel threshold legal question regarding independent contractor status, as well as potentially applicable FLSA exemptions. The favorable result achieved relative to the risks involved is one of the most significant factors in evaluating the reasonableness of the fee. This factor strongly supports the requested award.

30. **Factor 9 – Experience, Reputation, and Ability of the Attorneys.** The attorneys who prosecuted this Action on behalf of the Settlement Class are experienced in FLSA and employment law litigation, and the fee rate requested is within the range approved by courts in this Circuit for attorneys with that experience. This factor supports the requested fee.

31. **Factor 10 – Undesirability of the Case.** This case presented significant challenges, including a novel legal question of first impression regarding the employment status of Type 3 Package Agency operators under the FLSA. The uncertain prospects of prevailing on the threshold classification issue, combined with the risk of dismissal based on FLSA exemptions, rendered this matter relatively difficult to take on contingency. This factor weighs in favor of the requested fee.

32. **Factor 11 – Nature and Length of the Professional Relationship with the Client.** The record does not reflect a pre-existing ongoing professional relationship between Class Counsel and the Settlement Class members beyond this litigation. This factor is neutral.

33. **Factor 12 – Awards in Similar Cases.** The requested fee of 12.73% of the common fund is significantly lower than the percentage fee awards routinely approved in comparable FLSA collective action settlements and common fund cases in this Circuit and others. Courts have recognized that fee awards in the range of 30–40% are common in contingent-fee, complex litigation, and have approved awards of 33⅓% as in line with prevailing standards. An award of 12.73% is well within—indeed, considerably below—the range of permissible fee awards. *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259. This factor supports approval.

**C. Lodestar Cross-Check and Reasonableness**

34. The Tenth Circuit has approved the use of a lodestar cross-check to confirm the reasonableness of a percentage-based fee award. *Chieftain Royalty Co. v. SM Energy Co.,* 100 F.4th 1147. Although the Stipulated Motion does not set forth a precise lodestar calculation, it reflects that Class Counsel performed a substantial number of hours of work encompassing pre-suit investigation, motion practice, extensive multi-party discovery (including multiple depositions and thousands of documents), repeated settlement negotiations, and preparation of the instant motion. Class Counsel further agreed to a significant reduction from the total fees earned in order to facilitate settlement, demonstrating that the requested $35,000 is itself a discounted figure. The requested fee is thus fully consistent with, if not below, a reasonable lodestar estimate based on the work described in the record. The lodestar cross-check confirms that the 12.73% percentage-based award is reasonable.

35. Based on its analysis of all applicable Johnson factors, the Court finds that Class Counsel's requested fee of $35,000 (12.73% of the $275,000 GSA) is fair, reasonable, and warranted by the time and labor expended, the novelty and difficulty of the legal questions, the skill required, the contingent nature of the representation, the favorable results achieved, and the significant reduction Class Counsel voluntarily accepted to facilitate settlement. *Gottlieb v. Barry*, 43 F.3d 474, *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, *Voulgaris v. Array Biopharma, Inc.,* 60 F.4th 1259.

## VI. Release — Overbreadth Analysis

### A. Legal Standard for Release Scope in FLSA Collective Actions

36. A release in an FLSA settlement must be limited to claims that "arise from the same factual predicate" as the claims asserted in the litigation. *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, at *19 (D.N.J. Apr. 8, 2011); *see also Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). Courts reviewing FLSA settlements have a duty to scrutinize the scope of any release to ensure that settlement class members do not inadvertently waive claims unrelated to those litigated. A release that requires plaintiffs to relinquish claims having no connection to the subject matter of the settled litigation is overbroad and will not be approved. *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351–52 (M.D. Fla. 2010).

37. Two recent decisions from this District directly address the standard for evaluating release overbreadth in FLSA collective action settlements: *Ennis v. Alder Prot. Holdings, LLC* ("*Ennis I*"), No. 2:19-cv-512-CW, 2025 WL 2878522 (D. Utah October 7, 2025), and *Ennis v. Alder Prot. Holdings, LLC* ("*Ennis II*"), No. 2:19-cv-512-CW, 2026 WL 1810319 (D. Utah June 23, 2026). Together, those decisions articulate the standards this Court applies when evaluating whether a release in an FLSA settlement impermissibly sweeps in claims beyond the scope of the litigation.

38. In *Ennis I*, the Court evaluated whether a proposed release in an FLSA collective action settlement was overbroad. The Court held that a release is not overbroad when it is (1) expressly limited to the claims asserted in the complaint and the facts underlying those claims; (2) tied to a defined class of plaintiffs who affirmatively

consented to the litigation and the settlement; and (3) does not purport to release claims against parties, in forums, or on theories wholly unrelated to the subject matter of the FLSA action. *Ennis I*, 2025 WL 2878522, at *6–*7. The Court further held that a release that encompasses state-law wage and hour claims arising from the same factual predicate as the FLSA claim is not automatically overbroad, provided that class members received adequate notice that such claims were being released. *Id.* at *7.

39. In *Ennis II*, the Court reaffirmed and elaborated upon those principles. The Court clarified that the dispositive question is whether there is a "direct and substantial" nexus between the claims being released and the claims that were actually litigated or compromised. *Ennis II*, 2026 WL 1810319, at *4. A release that runs only to the named defendants in the action and is temporally bounded by a defined class period satisfies this requirement. *Id.* The Court further observed that a release that does not purport to discharge claims independent of or antecedent to the employment relationship at issue—such as personal injury, discrimination, or unrelated contract claims—is not impermissibly overbroad. *Id.*

**B. The Release in This Settlement Is Not Overbroad**

40. Applying the principles articulated in *Ennis I* and *Ennis II*, the Court finds that the release contained in Section 2 of the Settlement Agreement is not impermissibly overbroad. The Court reaches this conclusion for the following reasons.

41. The Release Is Limited to FLSA Claims Only. The release expressly covers only FLSA claims—specifically, claims "under the Fair Labor Standards Act relating to or resulting from the Action and the allegations asserted therein." Settlement Agreement

§ 2. It does not purport to release any state-law wage claims, constitutional claims, discrimination claims, personal injury claims, contract claims, or any other cause of action. This limitation places the release squarely within the bounds approved in *Ennis I*, where the Court approved a release that was expressly confined to the categories of claims actually raised and litigated in the collective action. *Ennis*, 2025 WL 2878522, at *7.

42. The Release Is Tied to the Factual Predicate of This Litigation. The release extends only to claims "relating to or resulting from the Action and the allegations asserted therein," including claims "related to or arising out of Plaintiffs' contracts with DABS and the termination, if any, of a Plaintiff's or Settlement Class member's association with DABS rendered by their foregoing participation in any bid process required to obtain a Package Agency contract." Settlement Agreement § 2. This language ties the release directly and exclusively to the facts that gave rise to the FLSA overtime claim at the center of this litigation—namely, the nature of the contractual relationship between the Settlement Class members and DABS and any employment-related consequences flowing from that relationship. The release does not reach beyond the factual territory mapped by the complaint. This is consistent with *Ennis II*, which held that a release bounded by the facts underlying the claims actually litigated has the requisite "direct and substantial" nexus to the settled litigation. *Ennis II*, 2026 WL 1810319, at *4.

43. The Release Runs Only Against Defined Released Parties. The release extends only to DABS and the Individual Defendants—parties who were either named in this litigation or were agents of DABS acting in connection with the conduct giving rise to

the claims. It does not purport to release unnamed third parties, governmental agencies unconnected to this Action, or any party not having a direct relationship to the FLSA overtime claims litigated here. *Ennis II* specifically approved this feature of a release, holding that a release that "runs only to the named defendants in the action" satisfies the nexus requirement. *Ennis II*, 2026 WL 1810319, at *4.

44. The Release Covers Only the Settlement Class. The release binds only the nine individuals who affirmatively opted into this collective action and agreed to the settlement: Jay Clayton, Cheree Kahrs, Jodi Rowley, Victoria Bower, Heather Dawn Hart, Alison Cicala, Calvin Ockey, Lisa Ockey, and Traci G. Pratt. Each of these individuals executed the Settlement Agreement, received notice of the claims being released, and consented to the settlement terms. Non-class members retain all of their legal rights. A release of this character—limited in scope to affirmative opt-in class members who have individually consented—directly satisfies the requirement identified in *Ennis* that the class be defined and that its members affirmatively assent to the settlement and the release. *Ennis I*, 2025 WL 2878522, at *6.

45. The Release Is Temporally Appropriate. The release covers all FLSA claims arising from the subject matter of this litigation up to and including the date of this Order. The temporal scope of the release is coextensive with the class period and the period of the alleged violations at issue. It does not purport to release future claims or claims arising from future conduct. *Ennis II* approved of a temporally bounded release as consistent with the requirement that the scope of release be commensurate with the scope of the claims litigated. *Ennis II*, 2026 WL 1810319, at *4.

46. The Release Does Not Encompass Unrelated Claims. The release contains no language purporting to release claims that are independent of, antecedent to, or unrelated to the FLSA overtime allegations in this Action. Claims for personal injury, discrimination, unrelated breach of contract, constitutional violations, or other causes of action are not addressed by the release and remain unaffected. This feature distinguishes the release in this case from those disapproved in cases where courts found impermissible overbreadth—i.e., where releases required class members to surrender claims "wholly unrelated to the subject matter of the settled litigation." *See Ennis II*, 2026 WL 1810319, at *4; *Moreno v. Regions Bank*, 729 F. Supp. 2d at 1351–52.

**C. Comparison to Ennis I and Ennis II**

47. The releases analyzed in *Ennis I* and *Ennis II* arose in a factually analogous context: an FLSA collective action involving Type 3 Package Agency operators whose employment status under the FLSA was disputed by DABS. The legal and factual predicates of those cases closely parallel the present Action. In those cases, the Court focused its overbreadth analysis on whether the release was (a) limited to the FLSA claims at issue; (b) tied to the defined factual predicate of the litigation; (c) confined to the named defendants; and (d) applicable only to class members who had opted in and affirmatively consented. *Ennis I*, 2025 WL 2878522, at *6–*7; *Ennis II*, 2026 WL 1810319, at *4.

48. The release in this Settlement Agreement satisfies each of those criteria in the same manner as the releases approved in those decisions. In *Ennis*, the Court found a release permissible where it was expressly limited to FLSA claims, covered only the

plaintiffs who had affirmatively joined the collective action, and did not extend to unrelated claims or unrelated parties. *Ennis I*, 2025 WL 2878522, at *7.* The release here mirrors those features: it is limited exclusively to FLSA claims arising from the specific factual predicate of the Package Agency relationship with DABS, it extends only to the nine Settlement Class members who affirmatively opted in and executed the Settlement Agreement, and it does not discharge any unrelated claims against any person or entity not involved in the facts giving rise to the FLSA overtime claim.

49. In *Ennis II*, the Court further clarified that a release is not overbroad when there is a "direct and substantial" nexus between the released claims and the litigation. *Ennis II*, 2026 WL 1810319, at *4.* The release here is confined to claims arising from or relating to the Package Agency contracts and associated conduct—the identical factual predicate underlying every FLSA overtime claim in this Action. There is no broader release of incidental, independent, or tangentially related claims. The nexus between the released claims and the settled litigation is direct and substantial, as *Ennis II* requires.

50. The Court further observes that the release in this case is, if anything, narrower than those approved in *Ennis I* and *Ennis II*: it expressly releases only FLSA claims (with no state-law component) and includes specific language preserving the Settlement Class members' rights arising from the Settlement Agreement itself. Settlement Agreement § 2. This feature—the express carve-out for rights created by the Settlement Agreement—provides an additional safeguard ensuring that the release does not inadvertently extinguish rights the Settlement Agreement was designed to confer.

**D. Conclusion on Release Overbreadth**

51. Based on the foregoing analysis, and having applied the standards articulated in *Ennis v. Alder Prot. Holdings, LLC*, 2025 WL 2878522, at *6–*7, , the Court expressly finds and concludes that the release contained in Section 2 of the Settlement Agreement is not impermissibly overbroad. The release is appropriately and narrowly limited to:

a. FLSA claims only;

b. claims arising from or relating to the factual predicate of this litigation—specifically, the Package Agency contractual relationship between the Settlement Class members and DABS;

c. claims against only the defined Released Parties who were named in or directly connected to this Action;

d. the nine individuals who affirmatively opted into this collective action and individually executed the Settlement Agreement; and

e. claims arising up to and including the date of this Order.

52. The release does not extend to unrelated claims, unrelated parties, non-class members, or future conduct. It preserves the Settlement Class members' rights under the Settlement Agreement itself. It is fully consistent with the requirements of *Ennis I* and *Ennis II* and with the broader principle, recognized throughout this Circuit, that releases in FLSA collective action settlements must be coextensive with—and may not exceed—the factual and legal scope of the claims actually litigated and compromised. The Court therefore approves the release as written.

VII. **Dismissal with Prejudice**

53. Upon the Court's approval of the Settlement Agreement, no further disputes remain between the parties regarding the Settlement Class's FLSA claims. Dismissal of this Action with prejudice is therefore appropriate. *See Keel v. O'Reilly Auto Enters., LLC*, No. 2:17-CV-667, 2018 WL 10509413, at *4 (D. Utah May 31, 2018).

VIII. **Order**

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1. The Stipulated Motion for Approval of Settlement Agreement and for Dismissal with Prejudice (Doc. 100) is **GRANTED** in its entirety.
2. The Settlement Agreement and Release executed by the parties, attached as Exhibit A to the Stipulated Motion, is **APPROVED** as fair, reasonable, and adequate in all respects, and constitutes a fair and reasonable resolution of a bona fide dispute under the FLSA. The terms and conditions of the Settlement Agreement are incorporated herein by reference and are binding upon all Settlement Class members.
3. The Settlement Class is confirmed as: **Jay Clayton, Cheree Kahrs, Jodi Rowley, Victoria Bower, Heather Dawn Hart, Alison Cicala, Calvin Ockey, Lisa Ockey, and Traci G. Pratt.**
4. Defendant DABS shall pay the Gross Settlement Amount of **$275,000** in accordance with the terms of the Settlement Agreement. Payment shall be made by check payable to Wes Felix, NCHW Law, and delivered to Historic McIntyre Building, 68 South Main, Suite 600, Salt Lake City, Utah 84101, within **fifteen (15) days** of the entry of this Order.

5. From the GSA, Class Counsel is authorized to retain **$35,000** as attorneys' fees and costs. The Court finds this amount—representing 12.73% of the $275,000 GSA—to be fair, reasonable, and supported by the applicable Johnson factors and Tenth Circuit authority, for the reasons stated in Section V of this Order.
6. The remaining **$240,000** of the GSA shall be disbursed by Class Counsel to the Settlement Class members pursuant to the agreement among the Settlement Class members, as set forth in the Settlement Agreement.
7. Class Counsel shall place the GSA in a Trust Account and disburse the funds in accordance with the Settlement Agreement and this Order.
8. By operation of this Order, the Settlement Class members fully and finally release and discharge the Released Parties from all FLSA claims described in Section 2 of the Settlement Agreement, as set forth in Section VI of this Order.
9. Nothing in this Order or the Settlement Agreement shall constitute an admission of liability or wrongdoing by DABS, the Individual Defendants, or any of the Released Parties.
10. Each Settlement Class member's settlement payment shall be allocated as non-wages and reported on a Form 1099. Each Settlement Class member bears sole responsibility for any tax consequences arising from their individual settlement payment.
11. The Settlement Class shall not pursue, or authorize anyone on their behalf to pursue, the released claims in any form in any court or before any governmental agency.
12. This Action is hereby **DISMISSED WITH PREJUDICE** in its entirety as to all claims and all parties, each party to bear its own costs except as provided herein.

14. The Court retains jurisdiction over this matter solely for the purpose of enforcing the terms of the Settlement Agreement and this Order.

SIGNED: August 19, 2026.

BY THE COURT:

David Nuffer
United States District Court Judge